## Richmond

FREDDIE LORENZO HORSLEY

v.

COMMONWEALTH OF VIRGINIA

No. 0252-85

Decided May 6, 1986

COUNSEL

Joseph A. Sanzone, for appellant.

Thomas C. Daniel, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—In this appeal the issues are whether the trial court properly admitted into evidence glass particles found on the clothing of the appellant and the opinion testimony of an expert in physical chemistry relative to the particles. We hold that a proper foundation was laid for the admission of this evidence, and affirm.

On December 6, 1984, the appellant, Freddie Lorenzo Horsley, was tried by a jury in the Circuit Court of the City of Lynchburg on indictments charging him with statutory burglary and grand larceny. The jury found him guilty as charged and fixed his punishment at five years in the penitentiary on each charge. The court sentenced the appellant in accordance with the jury's verdict.

At trial, the evidence disclosed that on September 10, 1984, a residence was burglarized. Admittance was gained by shattering a glass pane in the basement door. The house was ransacked and several items were taken, including a video cassette recorder (VCR), a "Bear Cat" police scanner, twenty dollars in cash, and several pieces of jewelry.

The appellant was apprehended in the area on the same day. On admission to jail, the police seized the tennis shoes that the appellant was wearing and sent them for testing by the forensic laboratory. Appellant was issued jail clothing and the remainder of his personal clothing, including a shirt and pants, were taken from him. They were placed upon a clothing rack, which was put in a closet used to store the clothing of inmates. The jail contained 100 individual racks numbered from 1 to 100, and each inmate

was assigned a rack number. The racks of all the inmates were hung together in the closet. The deputy who worked at the jail stated that it was possible that the racks could touch one another from time to time.

Glass particles were secured by the police from the basement door of the burglarized home for comparison purposes and turned over to the forensic laboratory for testing. On September 12, 1984, two days after the burglary, the shirt and pants of the appellant were seized from the jail storage closet pursuant to a search warrant, and were submitted to the forensic laboratory for testing.

Dr. Eugene Rakenbaker, a physical chemist employed by the Virginia Bureau of Forensic Science, testified that he scraped down the shirt and pants and found three glass particles, each approximately the size of a pin head. He did the same thing with the tennis shoes and found three additional glass particles. He compared these particles and found that one particle obtained from the tennis shoes and one particle obtained from the shirt and pants matched the optical properties of the control particle obtained from the basement door. The optical properties measured were the refracted index values of the glass particles.

The opinion testimony of the expert chemist for the Commonwealth that one of the three particles of glass found on the clothing of the defendant matched the control glass from the basement window was important evidence in this case. This evidence, together with the evidence of the match of the glass particle found on the tennis shoe, placed the defendant in the burglarized home and connected him to the crime, facts which he denied at trial.

The appellant argues that the shirt and pants were hung in the jail clothing closet for two days; that they were not segregated from other clothing; that they could have brushed against other clothing; and that, as a result, the Commonwealth failed to prove with reasonable certainty that the glass particles that were found lodged upon the shirt and pants were upon them when they were placed upon the rack. The Commonwealth's position is that the evidence was sufficient to establish with reasonable certainty that the clothing was in the same condition at the time it was examined as it was when it was taken from the appellant.

A proper foundation must be laid for the introduction of all evidence. The burden is upon the party offering real evidence to show with reasonable certainty that there has been no alteration or substitution of it. But, the burden is not so absolute that one must eliminate all possibility of tampering. *Robinson v. Commonwealth*, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971); C. Friend, The Law of Evidence in Virginia § 166 (2d ed. 1983). The reasonable certainty requirement is not met when some necessary link in the chain of possession is not accounted for "because then it is as likely as not that the evidence analyzed was not the evidence originally received." *Robinson*, 212 Va. at 138, 183 S.E.2d at 180.

In *Rogers v. Commonwealth*, 197 Va. 527, 90 S.E.2d 257 (1955), a case in which a blood analysis had been admitted as evidence without proper identification of the blood as that of the defendant, the Supreme Court stated the following:

> Such an analysis is important evidence in a trial of this sort, and care must be exercised to establish the essential links in the chain of evidence relied on to identify the blood analyzed as being the blood taken.

> * * *

> But where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.

*Id.* at 531, 90 S.E.2d at 259-60 (citation omitted).

Establishing a chain of custody of exhibits is necessary to afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained. *Bassett v. Commonwealth*, 222 Va. 844, 854-55, 284 S.E.2d 844, 851 (1981), *cert. denied*, 456 U.S. 938 (1982); *Compton v. Commonwealth*, 219 Va. 716, 729, 250 S.E.2d 749, 757 (1979); *Smith v. Commonwealth*, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978). The evidence of the Commonwealth in this case clearly established the chain of custody of the clothing and the glass particles. The contention of the appellant, however, is not that the chain of custody was not established; rather, he argues that by permitting

a situation to exist whereby his clothing might have come into contact with the clothing of other inmates, the Commonwealth had failed to prove beyond a reasonable doubt that there had been no substitution, tampering, alteration, or contamination of the clothing from which the tiny glass particles were obtained.

The shirt and pants in this case were placed upon a clothing rack assigned solely to the defendant and then placed in a closet used only for the purpose of storing clothing of inmates at the jail. There is no evidence of actual substitution, tampering, alteration, or contamination. The appellant contends only that there was a possibility that the clothing on the defendant's rack could have touched the clothing of another inmate and that, as a result, the minute glass particles possibly could have become attached to defendant's clothing in this manner. This hypothesis is highly speculative, and even if we were to accept it, the theory does not account for the matching glass particle found on the appellant's tennis shoe.

We hold that a proper foundation was laid by the Commonwealth for the admission of the glass particles and for the opinion testimony relative to them. The evidence established with reasonable certainty that there had been no substitution, tampering, alteration or contamination with the clothing. The credibility of the expert witness and the weight to be accorded the evidence were matters within the province of the jury. *See Essex* v. *Commonwealth*, 228 Va. 273, 285-86, 322 S.E.2d 216, 223 (1984).

For the foregoing reasons, we affirm the decision of the trial court.

*Affirmed.*

Duff, J., concurred.

Benton, J., concurring in part, dissenting in part.

I concur in affirming the conviction, but I dissent from that portion of the opinion which holds that the glass particle found on Horsley's clothing and expert testimony were admissible.

The basic rule for admitting demonstrative evidence is that the burden is upon the party offering the evidence to show with reasonable certainty that there has been no alteration or

substitution of it. But the burden is not absolute that "all possibility of tampering" be eliminated. . . . However, "[t]he requirement of *reasonable certainty* is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received."

*Robinson* v. *Commonwealth*, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971) (citation omitted).

In *Rogers* v. *Commonwealth*, 197 Va. 527, 90 S.E.2d 257 (1955), our Supreme Court said:

But where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.

*Id.* at 531, 90 S.E.2d at 260 (citations omitted).

The Commonwealth failed to establish a chain of possession of Horsley's shirt and pants. A vital link in the chain of possession was not accounted for; and the treatment of the clothing in the Lynchburg jail from the time it was taken from Horsley until it was delivered to Investigator Booth two days later leaves to conjecture what was done with it between the taking and the analysis.

The record indicates that Horsley and Anthony Johnson, a codefendant, were taken to the jail on the day of their arrest and were required to remove their clothing. The Commonwealth's evidence does not disclose the identity of the person who took possession of the clothing. The clothing was deposited with an unidentified deputy at the jail. Horsley's clothing was hung on a rack in a closet that was used to store the personal clothing of the jail's inmates. The record does not disclose the identity of the person who hung the clothing, when the clothing was hung, nor the manner in which Horsley's clothing was handled. For two days Horsley's clothing remained in the closet among the other clothes "[j]ust like you would have a rack hanging with your clothes in your own closet." Each inmate's clothing was hung on a separate rack; however, no effort was otherwise made to isolate Horsley's clothing from other clothing or debris in the closet.

After the clothing had been so exposed in the clothes closet for two days, Investigator Booth obtained a warrant for the seizure of Horsley's and Johnson's clothing from the jail. Deputy Miles retrieved the items from the closet and gave them to Sergeant Tyree, who delivered the clothing to Investigator Booth. The record does not disclose whether Horsley's clothing was handled separately from Johnson's clothing. The record does show that Investigator Booth delivered the items to the evidence room of the police department where Horsley's clothing was placed in a separate evidence bag.

Where, as here, a glass particle the size of a pin head was scraped from Horsley's clothing and offered to supply a basis for the opinion testimony of the forensic scientist, the requirement of "reasonable certainty" was not met. The Commonwealth failed to establish the identity of the person who received Horsley's clothing upon processing at the jail. Moreover, the testimony of Sergeant Tyree and Deputy Miles established that the clothing was not properly handled for the purpose of showing "with reasonable certainty" that it was in the same condition when analyzed as when taken from Horsley. Apparently, the clothing initially was removed in compliance with dress regulations at the jail and not in anticipation of use as exhibits. Accordingly, there can be no "presumption of regularity in the handling of exhibits by public officials" applied in this case. *Cf. Smith* v. *Commonwealth*, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978). Based upon this record, I believe that the Commonwealth failed to establish the requisite foundation for the admission of the glass particle and the expert's analysis of the particle.

I concur in the judgment of conviction, however, because I believe that under the circumstances the admission of the particle of glass from the clothing and the expert testimony constituted harmless error. The forensic scientist also examined a particle of glass found in Horsley's shoe. That glass particle and the expert's analysis were properly admitted because the chain of possession was established as to the shoes. The testimony of the forensic scientist in conjunction with the other evidence adduced at trial provided a sufficient basis for a jury to find Horsley guilty beyond a reasonable doubt.