COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Annunziata and Bumgardner
Argued at Alexandria, Virginia

WILLIAM ALAN PRESLEY

                                  MEMORANDUM OPINION[*] BY
v.       Record No. 2265-96-4      JUDGE JERE M. H. WILLIS, JR.
                                       JANUARY 20, 1998
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                  Thomas D. Horne, Judge

       Charles A. Anderson for appellant.

       Kathleen B. Martin, Assistant Attorney
       General (Richard Cullen, Attorney General, on
       brief), for appellee.


     On appeal from his conviction for voluntary manslaughter,

William Alan Presley contends that the evidence was insufficient

to support his conviction.  We agree and reverse and dismiss the

conviction.

     "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.  The jury's verdict will

not be disturbed on appeal unless it is plainly wrong or without

evidence to support it."  Maynard v. Commonwealth, 11 Va. App.

437, 439, 399 S.E.2d 635, 637 (1990) (en banc) (citations

omitted).  See Horsley v. Commonwealth, 2 Va. App. 335, 339, 343

S.E.2d 389, 391 (1986) ("The credibility of the expert witness

and the weight to be accorded the evidence were matters within

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

the province of the jury.").  When the sufficiency of the evidence is challenged on appeal, "it is our duty to look to that evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong."  Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961).

Presley lived with Sandra Laing and William Rossbach in a Loudoun County residence owned by Presley's father.  Although involved in an intimate relationship, Laing and Presley maintained separate bedrooms.  In the early morning of August 1, 1995, Presley called the Virginia State Police and requested that they "kick" Laing out of the house.  Trooper Alvin Blankenship advised Presley "to go to bed, get some sleep, and go to the magistrate's office the next day."

Rossbach testified that during that night, he heard banging noises and an argument between Laing and Presley.  At one point, he entered the room where Laing and Presley were arguing and saw Presley's hand around Laing's throat.  Presley removed his hands and said:  "Sorry, God.  I really messed up."  Presley then telephoned for an ambulance.  Laing was taken to Loudoun Hospital Center, where she died at 4:14 a.m.

The autopsy of Laing's body revealed a subdural hemorrhage on the left side and top of her head.  Dr. Frances Fields, Assistant Chief Medical Examiner, testified that Laing's death resulted from this hematoma, which had been caused by blunt force trauma occurring within twenty-four hours prior to death.  No

external bruise was found over the hematoma.  However, a bruise was noted on Laing's right eyelid and a "small reddish abrasion" was seen on her left forehead.

Presley told Sergeant Eric Noble that he "beat the hell out of [Laing]" and that he had hit her with a chair.  A broken chair was found near Laing.  Presley admitted to Deputy Clete Kresge that he had hit Laing and that "[s]he had pissed me off tonight."

Four defense witnesses testified to Laing's poor motor coordination, which caused her to suffer frequent falls and bruises.  Rossbach testified that Laing had stumbled and hit her face on a doorknob on the morning before she died.

Dr. Nicholas Lappes, a toxicologist, testified that the cumulative effect of the drugs in Laing's system was consistent with death by a drug overdose.  Dr. John Adams, a forensic pathologist, testified that Laing's death was related to a congenital deformity of her spine and skull and to chronic liver disease.  The spinal deformity caused her frequent falls and caused chronic pain in her neck and arms.  The liver condition prevented proper blood clotting, causing abnormal bruising.  Dr. Adams testified that Laing's subdural hematoma was at least twelve-hours old and that parts of it may have been seventy-two hours old.  While noting that the subdural hematoma resulted from a combination of blunt force trauma and drugs and alcohol, he opined that it could have developed spontaneously due to improper blood clotting.

Dr. John H. Lossing, a neurologist, testified that Laing died of suffocation because emergency room personnel were unable to intubate her successfully due to the deformity of her cervical spine. He opined that Laing's breathing difficulty resulted from excessive ingested medications. He opined that the hematoma caused a headache, which in turn led Laing to increase the dosage of her prescribed pain medicine, which may have produced an overdose.

Viewed in the light most favorable to the Commonwealth, the evidence failed to prove beyond a reasonable doubt that Presley intentionally killed Laing in the sudden heat of passion upon reasonable provocation. See Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986). Although he beat her, the evidence failed to prove that he inflicted the mortal injury. The medical examiner was unable to attribute Laing's subdural hematoma to Presley. She was unable to identify its cause. She acknowledged it could have occurred prior to the altercation between Laing and Presley. It could have resulted from Laing's prior accidental fall. See Hughes v. Commonwealth, 18 Va. App. 510, 518-19, 446 S.E.2d 451, 457 (1994) (en banc) (citation omitted).

Accordingly, the judgment of the trial court is reversed and the charge is dismissed.

Reversed and dismissed.