COURT OF APPEALS OF VIRGINIA

Present: Judge Annunziata, Senior Judges Cole and Baker[*]
Argued in Richmond, Virginia


DAVID GUY JONES

MEMORANDUM OPINION[**] BY
v.    Record No. 0863-97-2     JUDGE MARVIN F. COLE
                              DECEMBER 22, 1998
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
James E. Kulp, Judge

William K. Grogan (William W. Roberts;
William K. Grogan & Associates, on briefs),
for appellant.

Richard B. Smith, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Appellant, David Guy Jones, was convicted in a bench trial of failure to stop at the scene of an accident in which someone was injured in violation of Code § 46.2-894. On appeal, appellant contends the trial court: (1) erred in denying his renewed motion to strike the Commonwealth's evidence on the ground that the evidence was insufficient as a matter of law to support the conviction; (2) erred in concluding he was not telling the truth about a collateral issue causing the court to speculate that he was not telling the truth when denying

---

[*]Judge Baker participated in the hearing and decision of this case prior to the effective date of his retirement on July 31, 1998 and thereafter by his designation as senior judge pursuant to Code § 17.1-400, recodifying Code § 17-116.01.

[**]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

knowledge of the accident; (3) erred by disregarding testimony offered by an expert witness which supported appellant's theory of how the accident occurred and his lack of knowledge of the accident; and (4) erred by disallowing evidence of his lack of motive to knowingly fail to stop at the scene of the accident.[1] We affirm the conviction.

BACKGROUND

This case arises from an accident between a car and a tractor pulling two separate trailers (referred to herein as a tractor unit or truck) which occurred around noon on June 9, 1996. The evidence established that Whitney Rogers was driving a black Hyundai Elantra in the center lane of three eastbound lanes of Interstate 64 in Henrico County.

At trial, Rogers testified that he and his wife, Nancy, were en route to their home in Reidsville, North Carolina. He was forced to stop because of another accident in the center lane about one hundred yards ahead of him. At that time, Rogers' car was struck from behind, causing severe and extensive damage to his vehicle. He provided the following description of the damage to his vehicle from the accident: "the back trunk was pushed almost all the way in. There was fairly extensive damage on the back driver's side for the most part. And they couldn't . . . get the doors open to get me out . . . ." Rogers explained that

---

[1] By order, we denied that portion of appellant's petition for appeal that claimed the trial court erred in admitting photographs of the Rogers' car.

"they [rescue workers] cut the roof off and took me out."  His injuries from the accident consisted of a cut on the head requiring twelve stitches and a cervical strain.  He was taken to a hospital in an ambulance but was able to drive a rental vehicle to North Carolina later in the day.  His wife, Nancy, was also injured.  Rogers testified that the driver of the vehicle which hit him did not stop and report his name and address to him.

At the same time and place, Adrian Cudmore was traveling east on I-64 in the center lane.  He testified at trial that "it was raining very hard at the time and I was doing about 50, 55" when a "big double truck" passed him on the outside or left hand lane.  The truck was "going markedly fast for the [road] condition."

Cudmore testified that the tractor unit was between one and two hundred feet ahead of him when he saw brake lights come on in the lanes ahead of him.  Cudmore slowed down.  He then saw "the truck completely lock up and then begin to slide sideways."  As the truck slid sideways it went into the center lane ahead of him.  "Then it straightened up, and as it straightened up, I saw a car was damaged and obviously had been hit by the truck." Cudmore further stated that the truck did not stop but continued east on I-64.  According to Cudmore, Rogers' car "slid . . . very slowly . . . to the right hand lane and then onto the hard shoulder."  Cudmore parked behind Rogers' car to see if the occupants were all right.  Finding other people around and

realizing he could do nothing more, Cudmore left his card and continued his trip east on I-64. About one mile or one and one-half miles up the road, Cudmore saw parked on the shoulder of I-64 what appeared to him to be the same tractor unit that was involved in the accident. He observed the driver come around the front of the truck and get into the cab. It was still raining hard, and Cudmore continued his trip.

Trooper A.J. Burton responded to the accident scene. He found Rogers' black Hyundai on the right shoulder of the highway with severe rear end damage. Rogers' wife, Nancy, was able to exit from the vehicle; however, Rogers could not free himself and was trapped behind the steering wheel. Rescue workers arrived about the same time as the trooper and using their "Jaws of Life," they cut the roof off the car and removed Rogers.

Burton photographed Rogers' damaged vehicle after Rogers was removed by emergency personnel. Photographs were introduced into evidence that showed extensive damage to the rear end and left side of the vehicle. There is no dispute that the damage caused by cutting off the car roof was not done in the accident.

Based upon information gained during his investigation, Burton went to Consolidated Freightways, located about six miles from the scene of the accident. He discovered that appellant had been driving the tractor unit that day. He examined the double trailers and noticed black paint scrub marks on the passenger side of the rear trailer and a large amount of glass particles on

the axle of the rear trailer. Burton opined that the black paint marks appeared to be "fresh scrape marks" because the "metal was still clean and wasn't dirty at all." Burton identified photographs showing the paint marks on the side of the trailer and the glass particles on the rear trailer and axle.

Appellant moved the court to strike the Commonwealth's evidence on the ground it had not proved that he had any knowledge he was involved in an accident or that any injury had occurred. The court overruled the motion.

Appellant testified on his own behalf. He admitted that he was driving the Consolidated Freightways tractor unit at the time and place in question. He testified that he was proceeding east on I-64 near the Staples Mill exit when he came upon the first accident described by Rogers. He first observed the accident when he was between three and four hundred yards away from it. The accident had stopped traffic in the center lane. Appellant "began to apply the brakes, knowing to slow down because of the accident." He further testified that he did not stop but came almost to a stop. He then proceeded with the traffic past the accident. He denied any knowledge that he had struck Rogers' vehicle.

Appellant testified that, after passing the accident, "he had to go to the bathroom pretty bad." He came to the top of a knoll about a mile from the accident and pulled onto the shoulder of the road to "relieve himself." He was out of sight of the

- 5 -

accident. He stepped out of the truck, went around the front of the truck to the middle of the trailers and relieved himself. He stated, "It was raining pretty hard." His ultimate destination was the trucking company's Richmond terminal which was almost six miles away.

On cross-examination, appellant stated his truck had "mirrors on both sides of the cab" enabling the driver to see "what's going on with the trailers that you're towing." He stated that rain could have an effect on one's ability to see through the mirrors. Appellant testified that to the best of his knowledge, no part of his tractor unit went into the center lane.

Appellant called Steven Chewning, the president of an accident reconstruction and highway safety consulting firm, to corroborate his position that he had no knowledge of the accident and resulting injuries.

At the conclusion of all the evidence, appellant renewed his motion to strike the Commonwealth's evidence. The motion was overruled.

## I. SUFFICIENCY OF THE EVIDENCE

Appellant contends that in denying his renewed motion to strike, the trial court erred as a matter of law because the evidence was insufficient to support the conviction. He argues that the Commonwealth presented no direct evidence that he had knowledge of the accident, an essential element of the crime. Appellant acknowledges that the Commonwealth proved an accident

and an injury, but he insists it failed to prove beyond a reasonable doubt that he was involved in the accident or had knowledge that he had been involved in the accident or the injuries. To support his contention, he points to the testimony of his expert witness on accident reconstruction, Steve Chewning, as well as the absence of evidence that he had knowledge that the accident occurred.

The Commonwealth contends that knowledge may be inferred from the circumstances of the collision. It contends that the trial judge did not believe appellant when he testified that he had no knowledge of the accident. To prove appellant's knowledge, the Commonwealth points to the extensive damage done to Rogers' vehicle and to appellant's actions and conduct after the accident. The Commonwealth further argues that ample, credible evidence in the record exists from which the trial judge could infer that appellant had knowledge of both the accident and the injuries.

When considering the sufficiency of the evidence on appeal, our analysis is guided by well established principles.

> On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418

(1987).

This Court does not substitute its judgment for that of the trier of fact.  See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992).  In a bench trial, it is within the trial judge's province as the fact finder to assess the credibility of witnesses and the weight to be given the testimony.  See Servis v. Commonwealth, 6 Va. App. 507, 525, 371 S.E.2d 156, 165 (1988).  As fact finder, the trial judge has a right to weigh the testimony of all the witnesses, expert and otherwise.  See Hill v. Commonwealth, 8 Va. App. 60, 64, 379 S.E.2d 134, 137 (1989) (en banc).  "The credibility of [an] expert witness and the weight to be accorded the evidence [a]re matters within the province of the jury."  Horsley v. Commonwealth, 2 Va. App. 335, 339, 343 S.E.2d 389, 391 (1986).

"Where the trier of fact believes a witness has knowingly testified falsely in any material fact, he has a right to give the testimony such weight and credit as in his opinion it was entitled."  Kennedy v. Commonwealth, 1 Va. App. 469, 472, 339 S.E.2d 905, 907 (1986).  A trial court is able to observe the witnesses' demeanor and evaluate their testimony.  If the trial court concludes that a defendant's testimony is not credible, it is entitled to infer that the defendant lied to conceal his or her guilt.  See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987).  See also Brown v. Commonwealth, 5 Va. App. 489, 493, 364 S.E.2d 773, 775 (1988).

"'Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the only method of proof.'" <u>Cirios v. Commonwealth</u>, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988) (quoting <u>Parks v. Commonwealth</u>, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), <u>cert.</u> <u>denied</u>, 450 U.S. 1029 (1981)).

> "In all cases based on circumstantial evidence of guilt the conduct of the accused is an important factor in the estimate of the weight of circumstances which point to his guilt. . . . In such cases the Virginia Supreme Court has said that relevant evidence is any evidence 'which may throw light upon the matter being investigated, and while a single circumstance, standing alone, may appear to be entirely immaterial or irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'"

<u>Hope v. Commonwealth</u>, 10 Va. App. 381, 385-86, 392 S.E.2d 830, 838 (1990) (<u>en</u> <u>banc</u>) (citations omitted).

"'"Where inferences are relied upon to establish guilt, they must point to guilt so clearly that any other conclusion won't be inconsistent therewith."' Inferences may be taken from proved circumstances only to the extent those inferences are reasonable and justified." <u>Moran v. Commonwealth</u>, 4 Va. App. 310, 314, 757 S.E.2d 551, 553 (1987) (citations omitted).

The version of Code § 46.2-894 in effect at the time of the incident provided, in pertinent part, as follows:

> The driver of any vehicle involved in an accident in which a person is . . . injured or in which an attended vehicle or other

attended property is damaged shall
immediately stop as close to the scene of the
accident as possible without obstructing
traffic and report his name, address,
driver's license number, and vehicle
registration number forthwith to the State
Police or local law-enforcement agency, to
the person struck and injured if such person
appears to be capable of understanding and
retaining the information, or to the driver
or some other occupant of the vehicle
collided with or to the custodian of other
damaged property.

Any person convicted of violating the provisions of Code
§ 46.2-894 "shall, if such accident results in injury to
. . . any person, be guilty of a Class 6 felony."  Code
§ 46.2-900.

In Herchenbach v. Commonwealth, 185 Va. 217, 38 S.E.2d 328
(1946), the Supreme Court examined the substantially similar
predecessor to Code § 46.2-894.  The Court discussed the "duty
imposed upon the driver" and held that "[i]t requires positive,
affirmative action, -- that is, to stop and give the aid and
information specified."  Id. at 220, 38 S.E.2d at 329.  In
interpreting the meaning of the statute, the Supreme Court
stated:

How can a person perform these affirmative
acts unless he knows that his vehicle has
struck a person or an object?  Knowledge
necessarily is an essential element of the
crime.  This does not mean that the person
should have positive knowledge of the extent

- 10 -

of the damage or injuries inflicted.  It does mean that, in order to be guilty of violating the statute, "the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known.  If an injury is inflicted under such circumstances as would ordinarily superinduce the belief in a reasonable person that injury would flow, or had flowed, from the accident or collision, then it is the duty of the operator to stop his vehicle."

Id. (citations omitted).

We discussed Herchenbach in Kil v. Commonwealth, 12 Va. App. 802, 407 S.E.2d 674 (1991).  There, we said:

> We are not persuaded by the Commonwealth's argument that a reasonable person standard with regard to the occurrence of the accident is consistent with Herchenbach.  Accordingly, we hold that the Commonwealth must prove that the defendant possessed actual knowledge of the occurrence of the accident, and such knowledge of injury which would be attributed to a reasonable person under the circumstances of the case.

Id. at 810-11, 407 S.E.2d at 679.  See also Johnson v. Commonwealth, 14 Va. App. 769, 772, 418 S.E.2d 729, 731 (1992).

Based upon these authorities, the Commonwealth was required to prove beyond a reasonable doubt each of the following elements

- 11 -

of the crime charged: (1) Appellant was the driver of a vehicle which he knew was involved in an accident; (2) the accident caused personal injury to another; (3) appellant knew, or should have known, that another person was injured by the accident; and (4) appellant failed to stop immediately as close to the scene as possible and do all of the things specified in the statute.

In determining whether the Commonwealth proved the above-listed elements, we consider Cudmore's testimony that the "truck completely locked up." We also consider the fact that the rear trailer slid from the far left lane into the center lane, straightened up and continued on its way rather than rolling over or jackknifing.

To determine what appellant knew and when he knew it, we review the sequence of events that was before the fact finder. Appellant testified that when he came upon the first accident in the center lane, he slowed down but did not stop for traffic. He testified the wheels did not lock up, and he described his deceleration as normal. The trial judge was entitled to reject all of this testimony or any part of it in view of the fact it was contradicted by Cudmore. See Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (when weighing evidence, the fact finder is not required to accept entirely either party's account of the facts). Cudmore's eyewitness testimony, which was accepted by the trial judge, contradicted appellant's version of events. Cudmore stated that he noticed brake lights ahead,

- 12 -

slowed down, and "saw the truck completely lock up and then begin to slide sideways." The truck then "straightened up." Thus, the sequence of events, according to Cudmore, was: (1) The truck locked up; (2) then the rear trailer slid sideways across the middle lane; (3) the rear trailer struck Rogers' car; (4) the rear trailer straightened up; and (5) the tractor unit continued on its way.

Based on the evidence, the trial judge was entitled to infer that appellant applied his brakes to the extent that the truck "completely locked up" because of the accident ahead. The collision with and damage to Rogers' car was substantial. The trunk and body of the car were smashed. Glass was broken, and particles were left on the axle of the rear trailer. The trial judge noted that considering the evidence concerning the movement of appellant's truck and the extent of the damage, it is inconceivable that appellant did not have knowledge of the accident.

Other evidence supports the finding that appellant knew he had been involved in the accident. From the testimony of Cudmore and appellant, we know that about one mile to one and one-half miles down I-64 in a heavy rain, within six miles of his terminal, appellant pulled his tractor unit onto the shoulder of the road out of sight of the accident scene and parked. He claimed he did this to "relieve himself." He admitted that he inspected the rear trailer, according to his usual custom, but

did not see any damage. He then continued to the truck terminal, parked the tractor unit, and did not report any accident. The trial judge was entitled to infer from this evidence that appellant stopped to inspect the unit to see if the trailer incurred any observably significant damage before he reported to the terminal. Appellant claimed he saw no damage, but the police officer found fresh black scrub marks and glass particles. Appellant had just passed the Laburnum and the Staples Mill exits where he could have left I-64 safely if he desired to "relieve himself." Instead, he pulled off of I-64 as soon as he was out of sight of the accident scene and inspected the trailer. The trial judge was entitled to infer that appellant knew he had been involved in the accident, stopped his tractor unit to determine the extent of the damage, and, finding only minimal evidence of a collision, he decided not to report the accident to his employer.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was the driver of a vehicle involved in an accident and that this fact was known to the driver. From the facts as described herein, including the damage shown in the photographs of Rogers' vehicle and the fact that the rear trailer was loaded with 14,000 pounds of cargo, the evidence was also sufficient to prove that the defendant knew, or should have known, that a person was injured by the accident.

It is undisputed that the accident caused injury to Whitney

- 14 -

and Nancy Rogers and that appellant failed to stop and report the information required by the statute. Therefore, all of the essential elements of the crime have been proven beyond a reasonable doubt. We find no error in the refusal of the trial court to grant the renewed motion to strike the Commonwealth's evidence.

    II.   TRIAL COURT ERRED IN CONCLUDING THAT
          APPELLANT WAS NOT TRUTHFUL ABOUT A COLLATERAL
          ISSUE SO AS TO SPECULATE THAT APPELLANT WAS
          NOT TRUTHFUL IN DENYING KNOWLEDGE OF THE
          ACCIDENT

    III.  TRIAL COURT ERRED BY DISREGARDING PERTINENT
          FACTS OFFERED BY THE EXPERT WITNESS

We will consider questions II. and III. together. Appellant presented these arguments in a post-judgment motion for reconsideration. As explained in Part I., above, the trier of fact ascertains witness credibility, determines the weight to be given to a witness' testimony, and has the discretion to accept or reject any of the witness' testimony. See Servis, 6 Va. App. at 525, 371 S.E.2d at 165. Further, the fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert. See McLane v. Commonwealth, 202 Va. 197, 205-06, 116 S.E.2d 274, 281 (1960); see also Horsley, 2 Va. App. at 339, 343 S.E.2d at 391.

At sentencing, the trial judge explained why and how he made his credibility determinations. Our review of the record fails to show that the trial judge improperly rejected appellant's testimony or improperly rejected the expert's testimony.

- 15 -

Instead, the trial judge considered all of the evidence, and his rulings are supported by credible evidence in the record.

IV. WHETHER THE TRIAL JUDGE ERRED BY DISALLOWING EVIDENCE OF APPELLANT'S LACK OF MOTIVE TO FAIL TO STOP AT THE SCENE OF THE ACCIDENT

Appellant attempted to admit evidence of lack of motive on his part to leave the scene of the accident had he been aware of its occurrence. He identifies four instances where such evidence was refused.

(A) Appellant asked Louis Veasey, his supervisor at Consolidated Freightways, whether the company had any procedure for a driver to follow when he had been involved in an accident.

Veasey responded that the driver had certain paperwork which he had to take care of when this occurred. At this point, the Commonwealth's attorney objected on the grounds that such evidence was irrelevant and that the procedure after the accident had nothing to do with it because appellant testified that he was unaware that an accident had occurred. Therefore, the procedure could have had no effect on appellant's actions.

The following colloquy took place between defense counsel and the trial judge:

THE COURT: Well what's the relevance, Mr. Grogan?

[DEFENSE COUNSEL]: Well, your Honor, if there is an accusation of an accident and if they have procedures for you to go through, obviously they want to check to see if the driver is okay and everything like that. I just wanted to get that in, but I'll let it go.

This response constituted a waiver of the objection, and we find no error when the trial judge sustained the objection.

> (B)  Appellant attempted to admit evidence of his training as a driver to show his company had taught him what action to take in case of an accident, so if he had knowledge of the accident, his normal reaction would have been to stop rather than leave the scene of the accident.

At trial, appellant explained the company's policy with regard to accidents as follows:  "Well you have to fill out an accident report and submit a drug screen."  When asked "was that procedure followed in your case?," appellant replied, "it was."

Because appellant denied any knowledge that he was involved in an accident, the trial judge found such evidence irrelevant. We agree with this ruling because appellant's normal reaction was not a relevant issue; the appropriate inquiry would have explored what he did on this occasion.  Moreover, because appellant denied knowledge of the accident, he could not have followed the procedures for reporting an accident.  In fact, by failing to report the accident when he arrived at the terminal, he did not take the actions for which he was allegedly trained, thereby avoiding the responsibility of filing a report and submitting to a drug screen.  It was not until the police investigated the accident, contacted the company and asked to speak with appellant that authorities were able to confront appellant.  Moreover, appellant failed to proffer for the record the specific procedures to follow when reporting an accident.  See Smith v.

- 17 -

Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992) (if a party's evidence is ruled inadmissible, the party must proffer the evidence for the record, "otherwise the appellate court has no basis to decide whether the evidence was admissible") (citing Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)).

Absent a proffer and based on the evidence presented at trial, we cannot say the trial judge erred.  Accordingly, we find no merit to this objection.

> (C)  Appellant contended that he should have been permitted to solicit evidence from Veasey about company procedure to be taken after the accident.

Appellant claimed that such evidence would have shown he was not in violation of any company policy or regulatory agency policy, facts which would tend to support his lack of knowledge of the accident.  Appellant asked Veasey the following question:

> Besides a suspension for suspicion of an accident, is there any other action the company takes or that they expect their employees to take?

Upon objection of the Commonwealth's attorney on the ground of relevance, the trial judge sustained the objection.  Appellant did not proffer for the record what the policies would have required appellant to do, if anything.  Without such a proffer, this issue is not cognizable on appeal.  See id.  Moreover, we fail to see how such testimony would be relevant in light of appellant's failure to follow procedure and his denial of

knowledge.

(D) Appellant contends that the trial court erred when it refused to permit expert Steven Chewning to testify about customs, standards, and completion and training requirements adopted and enforced by the Department of Transportation.

At trial, the following exchange took place:

[DEFENSE COUNSEL]: Are you familiar with the customs and standards that have been adopted and enforced by the Department of Transportation with respect to tractor trailer drivers?

[CHEWNING]: I do. That's quite a bit of what we do, yes, DOT compliance and training.

[DEFENSE COUNSEL]: Okay. Have you had an occasion to examine the records in this particular case, that you could comment on whether procedures were followed or Department of Transportation guidelines were followed?

[CHEWNING]: The law –

[COMMONWEALTH'S ATTORNEY]: That's irrelevant, Your Honor. We're not suggesting that there was anything improper about the structure of the truck or the way that it was being operated.

THE COURT: Well why is that relevant? He's not contesting that.

[DEFENSE COUNSEL]: Your Honor, I would just go – our position has been if there was an accident in which Mr. Jones was involved, he didn't know about it. Now to decide whether somebody has knowledge, you need to know a lot about the person. You need to ask other things. I mean we don't have to ask this. We can leave it for the speculation on the part of the Commonwealth. We were just trying to go a little bit further and say there were no conditions that would have made this person – any condition so that he

– 19 –

> wouldn't have known that, other than the mere fact of the action upon the trailer.
>
> THE COURT:  Well they're not saying that there was anything about the hookups or anything else that was not consistent with motor vehicle provisions.
>
> [DEFENSE COUNSEL]:  Your Honor, then I have no further questions.

The effect of this discussion was to stipulate the evidence sought to be admitted by appellant.  Therefore, appellant cannot complain about the refusal to admit the evidence when he agreed to the stipulation and did not proceed further with the matter. Moreover, appellant failed to proffer what Department of Transportation guidelines were followed and how such evidence was relevant.  Accordingly, we find no error.

For the foregoing reasons, we affirm the conviction.

<u>Affirmed.</u>