COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

CHARLES ERSKINE CHURCH

v.      Record No. 0264-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 12, 2019

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge Designate

Lauren Whitley, Deputy Public Defender, for appellant.

A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General; David M. Uberman, Assistant Attorney General,
on brief), for appellee.

Charles Erskine Church appeals his convictions for object sexual penetration of a child

and taking indecent liberties with a child, in violation of Code §§ 18.2-67.2(A)(1) and

18.2-370(A)(1).[1] He argues that the trial court erred by denying his motion to dismiss due to a

failure to timely disclose exculpatory evidence. The appellant also contends that the trial court

erroneously admitted a pair of girl's underwear into evidence, along with related DNA evidence

and testimony. For the reasons that follow, we affirm the convictions.

---

[1] The record was sealed by the circuit court. Nevertheless, this appeal necessitates
unsealing relevant portions of the record in order to resolve the issues raised by the appellant.
Consequently, "[t]o the extent that we mention facts found only in the sealed record, we unseal
only those specific facts, finding them relevant to our decision in this case. The remainder of the
previously sealed record remains sealed." Du v. Commonwealth, 292 Va. 555, 560 n.3 (2017).

## I. BACKGROUND[2]

The appellant was tried by a jury and convicted for sexually abusing his daughter (the victim).[3]

On the evening of Sunday, November 1, 2015, the victim's mother took her and her younger sister to the appellant's apartment. At the time, the victim was eleven years old, and her sister was six. The children were scheduled to remain in the appellant's custody until Tuesday, November 3, 2015.

On Tuesday evening, the mother picked up the victim from basketball practice. During the drive home, the victim started crying. When her mother asked what was wrong, she said that "he tried to stick it in her," but she would not say more.

After the victim told her mother about the abuse, the mother took her to a hospital. Two pediatric nurse practitioners performed a sexual assault examination on her. During the exam, the victim identified the appellant as the person who hurt her. There was redness to the area around the victim's vulva and anus and bruising around the anus. She was tearful and had pain near her rectum.

The next day, an employee of the Child Advocacy Center conducted a forensic interview of the victim. She told the interviewer that the appellant "tried to stick his private in her front private part" but "it didn't work." She also said that she did not know if anything "came out of" the appellant's "private." Further, the victim revealed that she was forced to do "something" with her mouth to the appellant's body but she did not want to talk about it. During the

---

[2] Under the applicable standard of review, we view the evidence in the light most favorable to the Commonwealth, as the prevailing party below. See, e.g., Riner v. Commonwealth, 268 Va. 296, 303 (2004).

[3] This opinion refers to the appellant's daughter as "the victim," her mother as "the mother," and the appellant's wife at the time of the offenses as "the stepmother."

interview, the victim made a colorful drawing of the tank top and shorts she had worn on the night of the attack.

The police searched the appellant's apartment on November 4, 2015, the day after the victim told her mother about the crimes. Detective Steven Jones, with the Richmond Police Department, seized a pair of shorts with peace signs and stars printed on them, a pink tank top, a pair of girl's underwear, and a pair of men's underwear. The items were found together in a pile of clothing on the floor of the bathroom near the laundry hamper. The shorts and tank top matched the description of the outfit that the victim said she wore on the night of the offenses. A pair of girl's underwear, a child's size eight, was in the laundry pile directly beneath the shorts.[4] At the time of the incident, the victim wore child's size eight underwear, and her sister wore a child's size four.

At the appellant's jury trial, forensic experts testified regarding DNA evidence. Biological matter was collected from the inside crotch area of the girl's underwear. From that material, a DNA mixture profile was developed. The Commonwealth's forensic experts opined that the genetic material was from two people. Neither the appellant nor the victim could be eliminated as the contributors to the DNA mixture.[5]

A defense expert in forensic DNA analysis and recovery characterized the genetic material found on the girl's underwear as trace DNA. He opined that the presence of an allele that did not match the victim or the appellant made it likely that a third person contributed to the mixture. He also stated that there was "a very good chance" that the girl's underwear could have "picked up" DNA as a result of being deposited with other dirty laundry.

---

[4] The trial court admitted the underwear into evidence over the appellant's objection.

[5] One expert explained the likelihood of the appellant and the victim not being the contributors and the DNA coincidentally matching a random person was between one in 140 million and one in 1.3 trillion.

The victim testified at trial. She explained that on the evening of Monday, November 2, 2015, she and her sister were alone in the apartment with the appellant. The two girls went to bed, and the victim's sister fell asleep. Around 7:00 p.m., the appellant entered the bedroom and told the victim that "he was going to fuck" her.

According to the victim, after she and the appellant moved to his bedroom, he removed her shorts and underwear and then his jeans and underwear. After he put the victim down on the bed, he put his "front private part" in her "front private part." The victim testified that the appellant's "private part" was on both the outside and the inside of her "front private part" and that it hurt. She also said that she felt pain when the appellant touched the inside and outside of her "butt" with his penis. She described the pressure as feeling like she needed to "poop." According to the victim, at some point the appellant touched his tongue and fingers to her "front private part" and put his mouth on her breasts. He also put her mouth on his penis and "something came out" into her mouth.

The victim explained that after these assaults she went back to her bedroom. A short while later, the appellant returned and said he was going to "fuck" her sister. To protect her sister, the victim went back to the appellant's bedroom with him, and he "did everything again." He threatened the victim not to tell anyone what had happened or "one of [them] would wind up dead." She knew that the appellant always kept his gun in his room.

The victim was asked about what she wore on the night of the attack. She testified that on that night, she wore shorts with peace signs and stars printed on them, a pink tank top, and underwear. She could not describe her underwear.

During cross-examination of the victim, defense counsel raised an objection concerning discovery. Out of the presence of the jury, counsel asserted that the Commonwealth had not disclosed that the victim claimed the appellant had threatened to abuse her sister and that this

testimony was inconsistent with the victim's statements during her medical examination and forensic interview. The trial court instructed the prosecutor to investigate whether the victim had made prior inconsistent statements that had not been revealed to the defense. The court indicated that it would address any such matters the following day. After the discussion, the appellant finished cross-examining the victim, but the court did not release her as a witness.

On the morning of the second day of trial, the prosecutor reported that during trial preparation the victim mentioned that on the morning after the sexual abuse, the appellant had asked her if he "could do it again." The prosecutor also explained that before trial, the victim had not positively identified the girl's underwear as her own. In response, the trial court offered to have the victim retake the witness stand so that the appellant could question her further, but the appellant declined. Instead, he made a motion to dismiss the charges based on the late disclosure of exculpatory evidence. In the alternative, the appellant asked for a new trial. The court denied the motions.

The stepmother, who was a defense witness, testified that when she returned home from work at about midnight on November 2, 2015, she checked on the victim and her sister. At that time, the victim did not appear to be crying, and the stepmother did not notice anything out of the ordinary.

The jury found the appellant guilty of object sexual penetration of a child in violation of Code § 18.2-67.2(A)(1) and taking indecent liberties with a child in violation of Code § 18.2-370(A)(1).[6] The trial court imposed the jury's sentence of a life term of imprisonment for object sexual penetration of a child and one year for the indecent liberties offense, with the court suspending that year.

---

[6] The jury found the appellant not guilty of sodomy with a child and a second count of object sexual penetration of a child.

## II. ANALYSIS

The appellant argues that the trial court erred in refusing to dismiss the charges or grant him a new trial because the Commonwealth failed to meet its obligation under Brady v. Maryland, 373 U.S. 83 (1963), to disclose material exculpatory evidence. He also contends that the trial court erred in admitting the girl's underwear and the related DNA analysis and testimony into evidence.

### A. Brady Claims

In reviewing the denial of a Brady motion, the trial court's factual findings will not be disturbed absent clear error. See Walker v. Kelly, 589 F.3d 127, 140 (4th Cir. 2009). In contrast, we review the trial court's legal conclusions *de novo*. See id.

Under Brady, due process requires that the prosecution disclose evidence favorable to the accused that is material to guilt or punishment. Commonwealth v. Tuma, 285 Va. 629, 634 (2013); see Robinson v. Commonwealth, 231 Va. 142, 150 (1986). However, Brady does not provide a general right to discovery in criminal cases. Tuma, 285 Va. at 635.

A Brady violation has three components. First, the prosecution must have suppressed the evidence, either purposefully or inadvertently. Id. at 634. Second, the evidence at issue "must be 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'" Id. (quoting Skinner v. Switzer, 562 U.S. 521, 536 (2011)). Third, the evidence must be "material" under Brady, meaning "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Id. at 634-35 (quoting Smith v. Cain, 565 U.S. 73, 75 (2012)); see also Massey v. Commonwealth, 67 Va. App. 108, 125 (2016) (describing the third prong as whether the accused was prejudiced). "The accused has the burden of establishing each of these three components to prevail on a Brady claim." Mercer v. Commonwealth, 66 Va. App. 139, 146 (2016) (quoting Tuma, 285 Va. at 635).

The appellant argues that the Commonwealth belatedly disclosed three types of evidence in violation of Brady. First, he alleges that the Commonwealth failed to disclose before trial that the victim could not identify the girl's underwear as the pair she wore on the night of the offenses or as hers. Second, he contends that the Commonwealth suppressed the victim's "prior inconsistent statements." Third, he argues that the Commonwealth did not timely disclose that the stepmother reported that the victim exhibited no "red flags" of sexual abuse on the night of the incident. For the reasons that follow, we conclude that the appellant has failed to demonstrate that his due process rights as set forth in Brady were violated.

### 1. Inability to Identify Underwear

The appellant suggests that the victim's inability to specifically identify the underwear was exculpatory because it "related to the credibility and value of the DNA evidence." He also contends that it was exculpatory because it "undermined the admissibility of the underwear and the DNA evidence." Further, the appellant contends that this evidence was exculpatory because it "challenged the credibility" of the investigation and if he had known about this problem, he "would have conducted his own investigation into the lack of identification of the underwear."

We are unpersuaded that the facts that the victim could not remember wearing the underwear in question on the night of the offenses or whether it belonged to her were somehow favorable to the appellant. Other evidence in the record sufficiently established that she wore them on the night of the offenses. The police detective found the underwear directly underneath the shorts that the victim wore that night and described in detail. Viewing the record in the light most favorable to the Commonwealth, the victim's DNA was on the inside crotch of the underwear. In addition, evidence established that the victim wore size eight underwear, the same size as the underwear at issue. Although the appellant suggests on brief that he might have been able to prove that the underwear belonged to the victim's sister, she wore size four underwear.

- 7 -

For these reasons, we hold that the victim's inability to identify the underwear was not exculpatory. See, e.g., United States v. Bartko, 728 F.3d 327, 338 (4th Cir. 2013) ("Evidence is 'exculpatory' and 'favorable' if it 'may make the difference between conviction and acquittal' had it been 'disclosed and used effectively.'" (quoting United States v. Wilson, 624 F.3d 640, 661 (4th Cir. 2010))).

Finally, the appellant suggests that the evidence was exculpatory because if known, he would have changed his pre-trial and trial strategies. However, "the mere possibility that an alternate trial strategy *might* [have] produce[d] a more beneficial result is not the proper test for a Brady violation."[7] Mercer, 66 Va. App. at 149. Here, as in Mercer, the appellant's theory that the evidence would have provided the basis for different legal strategies before and during trial does not provide a basis for a valid Brady claim. Id.

For these reasons, the facts that the victim could not specifically identify the underwear as hers or as the pair that she wore on the night of the offenses were not exculpatory. Consequently, this evidence does not provide the basis for a valid challenge under Brady.[8]

---

[7] The appellant also contends that the Commonwealth affirmatively represented before trial that the victim had positively identified the underwear. To the extent that this argument relates to the Brady prong that the evidence must be "favorable" to the accused, we briefly address it. The appellant submits that the certificate of analysis contains the affirmative representation that the victim identified the underwear as hers. This factual interpretation, however, is undercut by the record. The certificate of analysis describes the underwear as belonging to the victim. It does not provide how the underwear was identified as such and falls far short of an affirmative representation that the victim identified it.

[8] Because we find that the appellant failed to meet his burden to prove that the evidence was favorable to him, we do not address the other two prongs of the Brady analysis. See, e.g., Tuma, 285 Va. at 635 (holding that the defendant's Brady claim failed on one prong and declining to conduct any further Brady analysis). For this reason, we also do not address the Commonwealth's discussion of the verdict being "worthy of confidence," as this term relates to the Brady component of materiality or prejudice. See Hicks v. Dir., Dep't of Corr., 289 Va. 288, 299 (2015); Tuma, 285 Va. at 640 (Lemons, J., concurring).

## 2. Inconsistencies in the Victim's Statements

The appellant maintains that the Commonwealth did not timely reveal the victim's claims that (1) the incidents included oral sex, (2) the appellant had threatened to sexually abuse her sister, and (3) the appellant asked her for sex again the morning after the incident.

"Brady is not violated, as a matter of law, when impeachment evidence is made '"available to [a] defendant[] during trial"' if the defendant has 'sufficient time to make use of [it] at trial.'" Tuma, 285 Va. at 635 (alterations in original) (quoting Read v. Va. State Bar, 233 Va. 560, 564-65 (1987)). Further, "[t]he point in the trial when a disclosure is made . . . is not in itself determinative of timeliness," even if the witness in question has completed her testimony, as "the trial itself [i]s far from over." Id. at 636 (quoting United States v. Darwin, 757 F.2d 1193, 1201 (11th Cir. 1985)).

The victim's statements that the appellant characterizes as prior inconsistent statements were disclosed to him either before or during trial.[9] On the first day of trial, the victim testified that the appellant had made her put her mouth on his penis and threatened her sister. The appellant objected based on Brady. After discussion between counsel and the trial judge regarding the Brady challenge, the appellant cross-examined the victim. He asked her about the threats to her sister and highlighted that she had not reported that information earlier. In addition, the appellant asked the victim why she had told the forensic interviewer that the appellant had not done "something to any other part" of her body.

On the second day of trial, the prosecutor reported that the victim had also mentioned that the appellant asked her for sex on the morning after the sexual abuse. In light of the Brady

---

[9] The Commonwealth disclosed some statements related to oral sex to the appellant before trial. During pre-trial discovery, the Commonwealth provided the appellant with the recorded statement of the victim that he had forced her to do "something" with her mouth to his body. Similarly, the Commonwealth informed the appellant by email that the victim alleged that he had touched her breasts and "butt" with his tongue.

challenge, the court provided the appellant with the opportunity to cross-examine the victim further regarding the purportedly inconsistent statements. The appellant did not exercise the option to recall the victim. Nor did he request a recess or continuance to review his strategy in light of that information. Thus, the appellant had the opportunity to make effective use of the evidence of the statements at trial and chose not to do so. He also failed to request a recess or continuance in order to consider whether his trial strategy should be altered in light of the complete information. Consequently, no <u>Brady</u> violation occurred.[10] <u>See id.</u> at 635-37.

### 3. The Stepmother's Observations

The appellant's last contention is that the Commonwealth committed a <u>Brady</u> violation by its late disclosure of the stepmother's report of the victim's demeanor on the night of the incident.

Evidence is not suppressed for <u>Brady</u> purposes when the Commonwealth discloses it in time for effective use by the defense at trial. <u>See Tuma</u>, 285 Va. at 637. The Commonwealth disclosed the stepmother's statement by email shortly before trial. In fact, the appellant called the stepmother as a defense witness. She testified that she noticed nothing amiss when she checked on the victim upon returning home from work at around midnight on November 2, 2015.

The record shows that the Commonwealth disclosed this information before trial and that the appellant made use of it. Thus, the Commonwealth did not suppress this evidence pursuant to <u>Brady</u>.[11] <u>See, e.g.</u>, <u>Lovitt v. True</u>, 403 F.3d. 171, 184 (4th Cir. 2005); <u>Tuma</u>, 285 Va. at 637.

In conclusion, the appellant has failed to establish a violation of his due process protections set forth in <u>Brady</u>. The victim's inability to identify the underwear was not favorable

---

[10] <u>See supra</u> note 8.

[11] <u>See supra</u> note 8.

to the appellant. Further, the record does not demonstrate, for purposes of a <u>Brady</u> analysis, that the Commonwealth suppressed the purportedly inconsistent statements made by the victim or the stepmother's report that she noticed nothing wrong on the night of the offenses. Accordingly, the trial court did not err in denying the appellant's motions to dismiss or for a new trial.[12]

### B. Admissibility of Evidence

On appeal, this Court "reviews a trial court's ruling admitting or excluding evidence for abuse of discretion." <u>Payne v. Commonwealth</u>, 292 Va. 855, 866 (2016). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." <u>Du v. Commonwealth</u>, 292 Va. 555, 564 (2016) (quoting <u>Sauder v. Ferguson</u>, 289 Va. 449, 459 (2015)). A reviewing court can conclude that "an abuse of discretion has occurred" only in cases in which "reasonable jurists could not differ" about the correct result. <u>Commonwealth v. Swann</u>, 290 Va. 194, 197 (2015) (quoting <u>Grattan v. Commonwealth</u>, 278 Va. 602, 620 (2009)). "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law." <u>Robinson v. Commonwealth</u>, 68 Va. App. 602, 606 (2018) (quoting <u>Dean v. Commonwealth</u>, 61 Va. App. 209, 213 (2012)).

"The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." <u>Perry v. Commonwealth</u>, 61 Va. App. 502, 509 (2013) (quoting <u>Bell v. Commonwealth</u>, 49 Va. App. 570, 576 (2007)). "The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance

---

[12] In light of the conclusion that no <u>Brady</u> violation occurred, we do not address the appellant's contention that dismissal or a new trial were the only appropriate avenues for relief. <u>See generally</u> <u>Novak v. Commonwealth</u>, 20 Va. App. 373, 389 (1995) ("The remedial relief to be granted by the trial court following a discovery violation or upon the late disclosure of evidence is within the trial court's discretion and will not be disturbed on appeal unless plainly wrong." (quoting <u>Moreno v. Commonwealth</u>, 10 Va. App. 408, 420 (1990))).

of the evidence." Atkins v. Commonwealth, 68 Va. App. 1, 9 (2017) (quoting Bloom v. Commonwealth, 262 Va. 814, 821 (2001)). Once this threshold for proving admissibility has been met, any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility. See Kettler & Scott, Inc. v. Earth Tech. Cos., 248 Va. 450, 459 (1994).

The appellant suggests that the pair of girl's underwear and related DNA evidence were irrelevant because the circumstances did not connect the underwear to the offenses charged. He also argues that the Commonwealth provided "no foundation" that the victim wore that pair of underwear "on the night of the alleged assault." On these bases he argues that the evidence should not have been admitted. We disagree.

### 1. Relevance

Evidence relating to a point properly at issue in a case is relevant and, therefore, admissible if it has "any logical tendency, however slight," to establish that point. Ragland v. Commonwealth, 16 Va. App. 913, 918 (1993). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" Commonwealth v. Proffitt, 292 Va. 626, 634 (2016) (alteration in original) (quoting Va. Elec. & Power Co. v. Dungee, 258 Va. 235, 260 (1999)). In order to be admissible as relevant, evidence must "tend[] to prove a matter that is properly at issue in the case." Id. at 635 (alteration in original) (quoting Brugh v. Jones, 265 Va. 136, 139 (2003)).

The pair of girl's underwear was found in the appellant's home less than two days after the occurrence of the sex offenses for which the appellant was charged. The underwear was the

victim's size and directly beneath shorts that matched the victim's description of those that she wore on the night of the crimes. A mixture of genetic material to which both the appellant and the victim contributed was found on the crotch of the underwear. These facts and circumstances tended to prove that the victim wore the underwear on the night of the offenses and the appellant's DNA was transferred to her body. Thus, the underwear, and the related DNA analysis, constituted relevant evidence to corroborate the victim's testimony that the appellant sexually assaulted her, and they were admissible for that purpose.

## 2. Foundation

"A proper foundation must be laid for the introduction of all evidence." Sabo v. Commonwealth, 38 Va. App. 63, 79 (2002) (quoting Horsley v. Commonwealth, 2 Va. App. 335, 338 (1986)). The burden is on the party offering the evidence, in this case the Commonwealth, "to show with reasonable certainty that there has been no alteration or substitution of it." Id. (quoting Horsley, 2 Va. App. at 338).

Viewing the entire record, the Commonwealth presented evidence sufficient to establish an adequate foundation for this evidence to be admitted. Detective Jones collected the underwear less than two days after the offenses occurred. He found it in the laundry pile with the victim's other clothing that she wore on the night of the assaults. In addition, the pair of underwear was the victim's size, and the only other child in the house was the victim's sister, who wore underwear four sizes smaller. Further, viewing the evidence in the light most favorable to the Commonwealth, the victim's DNA was found on the inside crotch of the underwear. The appellant challenges the factual inference that the underwear in fact belonged to the victim or that she wore it on the night of the assaults based on the possibility that the DNA was transferred to the underwear from other clothing in the laundry pile. However, the Commonwealth met its burden of proving by a preponderance of the evidence that the underwear

- 13 -

belonged to the victim and was worn by her on the night of the assaults. See <u>Bloom</u>, 262 Va. at 821. Since "this threshold for proving admissibility" was met, the appellant's challenges to the probative value of the underwear and related DNA evidence goes to the trier of fact's assessment of weight rather than admissibility. See <u>Kettler</u>, 248 Va. at 459.

For these reasons, the trial court acted properly within its discretion by admitting the underwear and the DNA test results of the genetic material collected from the underwear into evidence.

## III.  CONCLUSION

We hold that the alleged late disclosures of evidence did not violate the requirements of <u>Brady</u>.  Further, the trial court did not err in admitting the underwear and related DNA evidence. Accordingly, we affirm the appellant's convictions for object sexual penetration of a child and taking indecent liberties with a child.

<u>Affirmed.</u>