COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


LARRY T. WIGGINS

v.   Record No.  1542-95-4                    OPINION BY
                                        JUDGE CHARLES H. DUFF
FAIRFAX PARK LIMITED PARTNERSHIP           MAY 14, 1996
AND
EMPLOYERS MUTUAL CASUALTY COMPANY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Peter M. Sweeny (Peter M. Sweeny &
              Associates, P.C., on briefs), for appellant.

              Benjamin J. Trichilo (Trichilo, Bancroft,
              McGavin, Horvath & Judkins, P.C., on brief),
              for appellees.


     Larry T. Wiggins ("claimant") appeals a decision of the

Workers' Compensation Commission granting an application filed by

Fairfax Park Limited Partnership ("employer") and Employers

Mutual Casualty Company seeking a change in claimant's treating

physicians.  Claimant contends that the commission erred in (1)

finding that the physician/patient privilege is statutorily

waived for any actions brought under the Workers' Compensation

Act ("the Act"); and (2) requiring him to choose a new treating

physician from a panel offered by employer on the ground that his

current treating physicians failed to comply with their

obligation to produce medical records pursuant to Code

§ 65.2-604.  Finding no error, we affirm the commission's

decision.

## I. BACKGROUND

On June 17, 1991, claimant sustained a compensable back injury while working for employer.  A July 16, 1991 MRI revealed that claimant sustained a herniated disc at L4-L5.[1]  On August 23, 1991, based upon a memorandum of agreement executed by the parties, the commission entered an award for temporary total disability and medical benefits.

Claimant sought medical treatment from Dr. Paul McClain, a physician employed by Capital Area Permanente Medical Group ("CAPMG"), which provides medical services to the patients of Kaiser Permanente Medical Center ("Kaiser").  On November 8, 1991, employer's insurance adjusters, Love, Barnes and McKew, ("insurer"), sent a letter to Kaiser requesting an updated medical report concerning claimant's condition.  Insurer informed Kaiser that it had only received medical records concerning claimant's treatment through September 5, 1991, but nothing thereafter.  Receiving no response to its November 8, 1991 letter, insurer renewed its request to Kaiser on December 11, 1991.  The record does not show whether insurer received a response from Kaiser at that time.

In December 1991, Dr. McClain referred claimant to Dr. Robert Martuza, a neurologist, employed by Georgetown University Medical Center ("Georgetown").  On June 3, 1992, a rehabilitation

---

[1]The commission did not receive a copy of the MRI report until November 8, 1994.

nurse employed by Vocational Rehabilitation Services, Inc. ("VRS"), which insurer hired to provide rehabilitation services to claimant, wrote to Dr. Martuza. In her letter, the VRS nurse requested that Dr. Martuza send all medical reports concerning claimant's treatment to insurer and VRS.

On June 22, 1992, Grace Chow, a vocational rehabilitation consultant employed by VRS, met with Dr. Martuza. Dr. Martuza indicated that claimant should not return to any work involving heavy lifting or straining. On September 14, 1992, Dr. Martuza performed a Baseline Physical Capabilities Evaluation on claimant.[2] Dr. Martuza opined that claimant functioned below a sedentary level, and Dr. Martuza recommended work hardening. On October 19, 1992, Dr. Martuza referred claimant back to Dr. McClain.

On November 23, 1992, Chow sent a letter to Dr. McClain, enclosing a physical capabilities form and requesting that Dr. McClain complete the form and return it to VRS. In his December 13, 1992 response, Dr. McClain set forth specific restrictions for claimant. However, Dr. McClain did not complete the portion of the form indicating whether claimant could work full or part-time and the number of hours claimant could work. Dr. McClain concluded that claimant had not reached maximum medical improvement ("MMI"). His target date for MMI was 1996. Claimant

---

[2]The commission did not receive a copy of this evaluation until November 8, 1994.

3

would be reevaluated at that time.

In January and August 1993, claimant underwent independent medical examinations ("IMEs") with Dr. Anthony Debs. On September 30, 1993, Dr. Debs recommended that claimant return to his pre-injury work, but that he avoid frequent bending and stooping. Dr. Debs also recommended that claimant not lift more than twenty-five to thirty pounds and that he might benefit from work hardening.

On June 15, 1993, Dane C. Crook, a branch manager employed by VRS, wrote to Dr. McClain, informing him that VRS was insurer's authorized representative. Crook also informed Dr. McClain that VRS was responsible for determining the medical readiness of claimant to participate in vocational rehabilitation services. Crook requested that Dr. McClain furnish an updated physical capabilities form, because Dr. McClain had not thoroughly completed the first form. Crook also asked Dr. McClain to indicate whether claimant would benefit from work hardening, per Dr. Debs' recommendation.

On June 29, 1993, Dr. McClain completed another physical capabilities form, indicating that claimant could perform sedentary work, but that claimant could not return to full or part-time work at that time. Dr. McClain did not respond to Crook's question concerning work hardening. Once again, Dr. McClain indicated that claimant had not reached MMI, and that he would be reevaluated in 1996.

4

On September 13, 1993, the insurer wrote to claimant's counsel, offering claimant a panel of physicians. On October 22, 1993, the insurer again wrote to claimant's counsel, urging claimant to seek treatment with one of its panel physicians and advising him that "unless Kaiser Permanente provides our office with progress reports on a timely basis regarding any treatment to Mr. Wiggins, we will not place their bills in line for payment."

Claimant's counsel responded to the insurer on October 26, 1993, suggesting that the insurer reconsider its position and allow claimant to continue his medical treatment with Drs. McClain and Martuza. The insurer responded to claimant's counsel that it was only refusing to pay for Dr. McClain's treatment because he failed to provide current medical reports and respond to questions regarding claimant's ability to work. Insurer suggested that claimant cooperate with Maggie Norton, the vocational specialist employed by VRS, and that he choose a physician from the previously offered panel, since any other treatment would be unauthorized.

On November 22, 1993, claimant's counsel responded, indicating his belief that Dr. McClain had responded to all of insurer's requests for medical information. Claimant's counsel requested that insurer document the specific instances when Dr. McClain had not complied with their requests. Claimant's counsel also contended that vocational rehabilitation services were

inappropriate because claimant's treating physicians had not released him to any work.  Claimant refused to select a physician from the panel.

On December 13, 1993, insurer responded to claimant's counsel, stating that it had not received any medical records from Dr. Martuza indicating that claimant was totally disabled. The insurer again reiterated that "[p]er the advise of counsel, we will provide you with a panel of physicians since Dr. McClain failed to provide us with any information concerning your client's condition and work capabilities."  The insurer also requested that Dr. McClain provide reports regarding any examination of claimant after January 1992, any progress notes for each examination, and current restrictions placed upon claimant's ability to work.  The insurer stated that the attending physician's report provided by Dr. McClain did not sufficiently respond to its questions.[3]

On February 9, 1994, employer filed an application for hearing, requesting that the commission require claimant to seek medical treatment from one of the panel physicians offered to him

---

[3]Dr. McClain's January 6, 1992 attending physician's report indicated that he sent medical reports on December 18, 1991 and that he had examined claimant on September 9, 1991, September 17, 1991, September 23, 1991, November 11, 1991 and December 17, 1991. Dr. McClain indicated that disability was "unknown."  In his October 23, 1993 attending physician's report, Dr. McClain indicated that claimant suffered from a herniated disc and that he had been referred to Dr. Martuza.  Dr. McClain indicated that claimant's disability began June 17, 1991.  Dr. McClain indicated that a return to work date would be determined by a pending MRI and possible surgery.

on September 13, 1993.  Employer's application alleged that Dr. McClain failed to provide medical reports and respond to insurer's questions concerning claimant's medical status and work abilities.  As support for its application, employer attached copies of the insurer's September 13, 1993 and December 13, 1993 letters to claimant's counsel.

On March 1, 1994, the commission noted that probable cause existed to docket the application.  On March 14, 1994, the application was selected for an on-the-record determination.  On March 29, 1994, employer filed a second application, making the same allegations as in the February 9, 1994 application, but attaching additional documentation.

On March 25, 1994, Dr. McClain completed an attending physician's report, indicating that it was "unknown" when claimant could return to work.  On April 11, 1994, Norton wrote to Dr. McClain, requesting copies of all of Dr. McClain's records relating to his treatment of claimant and his opinion of claimant's current restrictions.  Norton did not receive a response nor did she receive a copy of Dr. McClain's March 25, 1994 attending physician's report.

On May 10, 1994, Norton faxed a copy of her March 10, 1994 letter to Dr. McClain's office, requesting a response.  Norton did not receive the form back from Dr. McClain.  Instead, she received his handwritten progress notes dated November 16, 1992 through March 25, 1994.  The notes did not indicate claimant's

work capacity.

On March 10, 1994, Norton also wrote to Dr. Martuza, requesting he complete a physical capabilities form. She did not receive a response, and, on May 10, 1994, she faxed another copy of her letter of Dr. Martuza's office. Norton did not receive any response from Dr. Martuza.

On November 4, 1994, Norton wrote another letter to Dr. Martuza, enclosing another physical capabilities form for him to complete, and asking him to address specific questions. Norton's office received a response to this letter on November 11, 1994, the date of the hearing. Dr. Martuza did not specifically answer Norton's questions and did not thoroughly complete the form. Although Dr. Martuza indicated that claimant could perform sedentary work, he also indicated that claimant's restrictions, and whether he could work full or part-time, would have to be determined by vocational rehabilitation. Dr. Martuza stated that he could not be certain if claimant had reached maximum medical improvement.

On July 18, 1994, employer deposed Dr. McClain. During the deposition, claimant's counsel objected when employer's counsel wanted to view claimant's entire medical file. Claimant's counsel contended that reports for unrelated treatment might be in the file. In addition, Dr. McClain refused to allow employer's counsel to view the file. Kaiser's legal department informed employer's counsel, during the deposition, that before

8

he could look at the file, he needed a signed authorization from claimant or a subpoena. Subsequently, employer's counsel subpoenaed these medical records. However, they were not produced before Dr. McClain's second deposition, scheduled for August 10, 1994, nor did Dr. McClain arrive at the deposition with claimant's medical file.

During the second deposition, after conversations with Kaiser's legal department, Dr. McClain stated that he had no authority to copy or send any medical records. In August 1994, Georgetown also refused to release claimant's medical records to employer's counsel without a patient authorization or compulsory process valid in the District of Columbia. Claimant ultimately signed a release for these records, which were filed with the commission on November 8, 1994.

On December 9, 1994, at Dr. McClain's rescheduled deposition, he maintained that he was not responsible for claimant's medical records because they were maintained by Kaiser. Dr. McClain and Kaiser's counsel stated that medical files could not be released without the patient's consent, a subpoena duces tecum, or intervention from the company's legal department.

On November 14, 1994, Deputy Commissioner Colville found that employer was justified in seeking a change in treating physicians. The deputy commissioner's decision was based upon the physicians' refusals to comply with Code §§ 65.2-604(A) and

65.2-607(A), pertaining to supplying medical records upon request to employer and insurer. The full commission affirmed, finding that Drs. McClain and Martuza, and Kaiser and Georgetown, failed to perform their statutory duty to provide timely and complete medical reports under Code § 65.2-604(A).

## II.  PHYSICIAN/PATIENT PRIVILEGE

Citing Code § 65.2-607(A), the full commission held that "[t]he physician-patient privilege is statutorily waived for any actions brought under the Act." Code § 65.2-607(A) provides in its pertinent part:

> After an injury and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Commission, shall submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Commission. . . . The employee shall have the right to have present at such examination any duly qualified physician or surgeon provided and paid by him. No fact communicated to, or otherwise learned by, any physician or surgeon who may have attended or examined the employee, or who may have been present at any examination, shall be privileged, either in

10

> hearings provided for by this title, or any
> action at law brought to recover damages
> against any employer subject to the
> provisions of this title.

Claimant argues that Code § 65.2-607(A) only waives the physician/patient privilege as to information derived from independent medical examinations and does not support the commission's finding that the physician/patient privilege is statutorily waived as to any physician and for any action brought under the Act. This issue appears to be one of first impression in Virginia.

The commission's construction of the Act is entitled to great weight on appeal. City of Waynesboro Sheriff's Dep't v. Harter, 1 Va. App. 265, 269, 337 S.E.2d 901, 903 (1985). General rules of statutory construction provide that, "'[i]f the language of a statute is plain and unambiguous and its meaning perfectly clear and definite, effect must be given to it regardless of what courts think of its wisdom or policy.'" Long v. Commonwealth, 7 Va. App. 503, 506, 375 S.E.2d 368, 369 (1988) (per curiam) (quoting Temple v. City of Petersburg, 182 Va. 418, 423, 29 S.E.2d 357, 358 (1944)). "Unless a literal construction of a statute would result in internally conflicting provisions amounting to a 'manifest absurdity,' courts cannot construe a statute in a manner that would result in holding the legislature did not mean what it actually expressed." Last v. Virginia State

<u>Bd. of Medicine</u>, 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992).

The literal construction of Code § 65.2-607(A) does not limit the waiver of the physician/patient privilege to facts communicated or learned by a physician only during an IME. The plain language dictates that any facts communicated to or learned by "any" physician who may have "attended or examined" the claimant "or" been present at any examination are not privileged in any hearings under the Act or actions at law. Thus, following general rules of statutory construction, we hold that the commission did not err in finding that Code § 65.2-607(A) waives the physician/patient privilege as to all physicians and in all proceedings under the Act.

The commission's ruling is also consistent with the language of Code § 8.01-399(B). Code § 8.01-399(B) provides a qualified statutory physician/patient privilege expressly reserved for civil proceedings. However, medical reports of a plaintiff in a civil action are not protected by the physician/patient privilege if the plaintiff's physical or mental condition is in issue. <u>City of Portsmouth v. Cilumbrello</u>, 204 Va. 11, 15, 129 S.E.2d 31, 34 (1963); <u>see also</u> Code § 8.01-399(B). Moreover, Code § 8.01-399(C)(i) provides that Code § 8.01-399 does not repeal or otherwise affect the provisions of Code § 65.2-607 related to privileged communications between physicians and surgeons and employees under the Act. In <u>Pierce v. Caday</u>, 244 Va. 285, 290,

12

422 S.E.2d 371, 373 (1992), the Supreme Court cited Code § 65.2-607 as one of many examples where the qualified statutory physician/patient privilege reserved for civil proceedings pursuant to Code § 8.01-399 does not apply.

Claimant also argues that Code § 65.2-604 allows only the employer, employee, or insurer to request medical records related to claimant's condition.  Claimant argues that this code section did not give the rehabilitation provider the legal right to request and demand production of medical records from claimant's treating physicians without obtaining claimant's consent.  The commission did not specifically address this distinction in the statute.  We need not address this argument on appeal.  The commission's holding is supported by credible evidence, which showed that the treating physicians refused to produce claimant's medical records to the employer and insurer pursuant to their statutory duty to do so under Code § 65.2-604.

III.  <u>CHANGE IN TREATING PHYSICIANS</u>

Claimant argues that the commission erred in requiring him to select a new treating physician on the ground that Drs. McClain and Martuza, and Kaiser and Georgetown, refused to timely provide copies of claimant's medical reports to the employer and insurer upon request.  Abundant credible evidence in the record shows that these physicians and medical providers refused to comply with Code § 65.2-604.

The record contains evidence of numerous instances where Drs. McClain and Martuza did not timely or thoroughly respond to the insurer's requests for medical records and information.  In addition, Drs. McClain and Martuza and their counsel made it clear to employer's counsel in depositions and in correspondence that they would not voluntarily produce copies of their medical records related to claimant's treatment without a signed patient authorization, a subpoena, or intervention by counsel.  This policy is contrary to the statutory duty imposed upon these health care providers by Code § 65.2-604.  Because credible evidence supports the commission's finding that Drs. McClain and Martuza were unwilling to meet their statutory duty under Code § 65.2-604, the commission did not err in removing them as the treating physicians and requiring claimant to select a new treating physician from a panel offered by employer.

For the reasons stated, we affirm the commission's decision.

<u>Affirmed.</u>

14