COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Hodges
Argued at Alexandria, Virginia


GREAT NORTHERN NEKOOSA CORPORATION AND
 EMPLOYERS INSURANCE OF WAUSAU
                                              OPINION BY
v.   Record No. 0228-01-4          JUDGE ROSEMARIE ANNUNZIATA
                                           OCTOBER 23, 2001
LARRY L. WOOD


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Susan A. Evans (Siciliano, Ellis, Dyer &
          Boccarosse, on brief), for appellants.

          Joseph T. Trapeni, Jr. (Trapeni, Romero &
          Morrison, P.C., on brief), for appellee.


     The appellants, Great Northern Nekoosa Corporation and

Employers Insurance of Wausau, appeal the decision of the

Workers' Compensation Commission to award benefits to Larry L.

Wood, pursuant to Code § 65.1-56(18), the statute in effect at

the time of the accident, upon finding he is permanently

unemployable in gainful employment.  For the reasons that follow,

we affirm.

                              I.

                          BACKGROUND

     On appeal, we review the evidence, together with all

reasonable inferences that may be drawn, in the light most

favorable to Wood, the party prevailing before the commission.

Great Eastern Resort Corp. v. Gordon, 31 Va. App. 608, 610, 525

S.E.2d 55, 56 (2000).  Wood was injured on December 30, 1988,

while working as a maintenance mechanic for Great Northern Nekoosa Corporation (employer).  He was then thirty-seven years old.  While he assisted in changing a 3/4 inch steel crane cable, the cable slipped and fell on Wood's face, causing him to fall from his position on top of a truckload of logs, twelve to fourteen feet to the concrete roadway.  He was diagnosed with a closed brain injury, right frontal intracerebral hematoma, a basilar skull fracture with multiple air/fluid levels, a contusion to the right side of the face, multiple fractures to the face and right orbit, chest and neck trauma, aspiration pneumonities and pulmonary contusion, and pneumonia.  The claim was accepted as compensable, resulting in a total of five hundred weeks of compensation benefits pursuant to various awards.  Subsequently, Wood sought an award of permanent total compensation benefits pursuant to Code § 65.1-56(18).

After several years of medical treatment, the employer offered Wood a part-time position as a work order processor, which required him to process work orders using a computer software package by entering information into the computer database from card files.  The position had previously been filled by college students on a part-time basis, but had been eliminated in August 1992.  The job was revived and modified for Wood.  The job was obtained for Wood by a vocational rehabilitation specialist and was approved by his treating physician and treating psychologist.  Wood performed fewer than one-half the job tasks required of the last employee in the position.  Wood testified that he obtained this position because "this was the only thing they could find that I might be capable

of doing."  He earns $8.59 per hour and certain fringe benefits, including holiday pay, vacation pay, health insurance and a retirement plan.  Although the job was approved for sixteen hours per week, Wood was only scheduled to work twelve hours per week and, in fact, worked even fewer hours than assigned because of the fatigue and severe headaches he suffered.  Furthermore, he often cannot perform his assigned tasks.  In his stead, his supervisor performs those tasks when those tasks are important.  Wood performs them when he is able.

Marsha Hoexter, an expert in vocational rehabilitation, basing her conclusions on the medical, psychological and rehabilitation reports, testified that "there are not any jobs out in the competitive labor market that [Wood] would be considered for."  She concluded that employers in the competitive market would not be as accommodating as the employer such that Wood could maintain a position elsewhere.  Richard J. Milan, Jr., Ph.D., concluded that

> the objective and psychometric evidence and collateral reports converge to strongly indicate that this gentleman is effectively disabled by the residual effects of his work related traumatic brain injury.  He requires special accommodations to work even part-time and is unable to sustain anything approaching full-time employment in a competitive work environment.

The commission concluded that Wood was not employable in gainful employment and, thus, is totally and permanently incapacitated.  It entered an award in his favor for $362 per week beginning July 30, 1998.  It is from that decision that the employer appeals.

II.

<u>Analysis</u>

Code § 65.1-56(18) of the Workers' Compensation Act provided, <u>inter</u> <u>alia</u>, that:

> [A]n injury to the brain which is so severe as to render the employee permanently unemployable in gainful employment, shall constitute total and permanent incapacity, to be compensated according to the provisions of Section 65.1-54.

The commission found that because the employer revived and modified the position to meet Wood's needs and not out of business necessity, his employment did not constitute "gainful employment." Employer contends (1) that the commission too narrowly defined "gainful employment" and (2) that Wood's position is beneficial to the employer. Employer argues that Wood does not meet this definition because he is and has been gainfully employed since January 11, 1993. We disagree.

A.  The Legal Definition of "Gainful Employment"

The phrase "unemployable in gainful employment" is not defined in the Act.  Therefore, the commission determined that

> gainful employment is employment that is beneficial to both the worker performing the job, as well as the employer providing the opportunity.  It is not a position that is specifically created for the injured worke[r] in the absence of a pre-existing need of the employer.  It is not a position created by the employer by transferring work duties from other workers for no apparent business purpose, where the end result is that the same work is performed and there is an increase in labor cost without a concomitant business benefit for the employer.  Gainful employment results in profits and benefits both for the worker and the employer.

The issue of whether the commission erred in finding that Wood was "unemployable in gainful employment," implicates a core question of first impression in Virginia.  The commission's description of "gainful employment" is a conclusion of law that is not binding on this Court.  Thomas Refuse Service v. Flood, 30 Va. App. 17, 20, 515 S.E.2d 315, 317 (1999).  "However, the commission's construction of the Workers' Compensation Act is entitled to great weight on appeal."  Id. (citing Wiggins v. Fairfax Park Ltd., 22 Va. App. 432, 441, 470 S.E.2d 591, 596 (1996)).  We now adopt the commission's description of "gainful employment."

"It is a well established rule of construction that a statute ought to be interpreted in such a manner that it may have effect, and not found to be vain and elusive.  Every interpretation that leads to an absurdity ought to be rejected.

It is our duty to give effect to the wording of the statute, and allow the legislative intention to be followed." Barnett v. D.L. Bromwell, 6 Va. App. 30, 34, 366 S.E.2d 271, 273 (1988) (quoting McFadden v. McNorton, 193 Va. 455, 461, 69 S.E.2d 445, 449 (1952)).

To constitute total incapacity, a brain injury must render an individual "unemployable in gainful employment." The phrase "gainful employment" must, therefore, have some meaning beyond "any" employment.

We hold that the commission's interpretation of the phrase, "unemployable in gainful employment," is consistent with the statutory purpose and that it properly determined that Wood was totally and permanently incapacitated, in accordance with that interpretation. A definition of "gainful employment" in this context that does not consider the labor market and the motivations of a potential employer would swallow the rule such that any brain injury no matter how severe would be noncompensable if one employer were willing to hire an individual for non-business reasons, such as compassion. Under such a definition, that person would be "employable in gainful employment" and ineligible for total disability benefits. The limitation to "gainful" employment would be rendered meaningless.

While the Virginia appellate courts have not addressed the issue previously, we find that the definition adopted by the commission is supported by the decision of the Virginia Supreme Court in Atlantic Life Insurance Co. v. Worley, 161 Va. 951, 959, 172 S.E. 168, 171 (1934), in which the court addressed analogous issues. In its consideration of the phrase "total and permanent

disability" in the context of insurance policy coverage, the Virginia Supreme Court rejected an interpretation of the phrase that disallowed benefits if the individual could engage in "any occupation whatsoever." Id. The Supreme Court defined "total and permanent disability" as the inability to perform work for profit "in substantially the customary and usual manner in which such occupation is prosecuted." Id. at 960, 172 S.E. at 172.[1] The Supreme Court's definition, like the commission's definition, implies that the employer needs the employee as it would need any other employee to perform the tasks of the occupation. In short, the employment of a claimant has a business purpose.

In adopting the commission's definition of "gainful employment," we are also persuaded by Professor Larson's so-called "odd-lot" doctrine.[2] Professor Larson defines "odd-lot" workers as within the category of the totally disabled:

> [T]otal disability may be found in the case of workers who, while not altogether incapacitated for work, are <u>so handicapped that they will not be employed regularly in any well-known branch of the labor market</u>. The essence of the test is the probable dependability with which claimant can sell

---

[1] The Supreme Court subsequently relied on its definition in <u>Worley</u> in two worker's compensation cases concerning the loss of use of two members. <u>See</u> <u>Borden, Inc. v. Norman</u>, 218 Va. 581, 586, 239 S.E.2d 89, 92 (1977) (adopting the <u>Worley</u> definition of total and permanent incapacity to determine the propriety of an award under former Code § 65.1-56(18) of the Workers' Compensation Act); <u>Virginia Oak Flooring Co. v. Chrisley</u>, 195 Va. 850, 80 S.E.2d 537 (1954) (adopting the same definition of "total and permanent loss" in the context of former Code § 65-53(18) of the Virginia Workers' Compensation Act).

[2] The term "odd-lot" refers to a worker who is "so substantially disabled as to be unable to find stable employment, and thus is considered totally disabled and entitled to worker's compensation benefits under the odd-lot doctrine." <u>Black's Law Dictionary</u> 1107 (7th ed. 1999).

> his or her services in a competitive labor
> market, undistorted by such factors as
> business booms, sympathy of a particular
> employer or friends, temporary good luck, or
> the superhuman efforts of the claimant to
> rise above crippling handicaps.

Arthur Larson & Lex K. Larson, 4 <u>Larson's Workers' Compensation Law</u> § 83.01 (2001) (emphasis added).  Most states considering the issue have incorporated Professor Larson's concept.  <u>See</u>, <u>e.g.</u>, <u>Ellenburg v. Jim Walter Resources</u>, 680 So.2d 282, 285 (Ala. Civ. App. 1996) (defining a totally disabled employee as one "who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist"); <u>Port Everglades Terminal Co. v. Canty</u>, 120 So.2d 596, 600 (Fl. 1960) (same); <u>Gunderson v. City of Ashland</u>, 701 S.W.2d 135, 136 (Ky. 1985) (adopting Larson's definition); <u>Johnson v. Fidelity & Casualty Ins. Co. of New York</u>, 618 So.2d 651, 654 (La. Ct. App. 1993) (an employee is totally disabled when his "services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist"); <u>Bullis School v. Justus</u>, 377 A.2d 876, 880 (Md. Ct. Spec. App. 1977) (same); <u>Mastellar v. Nelson Co-op Creamery</u>, 216 N.W.2d 836, 837 (Minn. 1974) (same); <u>Tee v. Albertsons, Inc.</u>, 842 P.2d 374, 378 (Or. 1992) (finding that permanent and total disability status depends on one's ability to "sell his services on a regular basis in a hypothetically normal labor market") (subsequently modified by statute).

B.  Sufficiency of the Evidence

We further find no merit in the employer's contention that the evidence fails to support the commission's finding that Wood's employer did not have a business purpose for creating his position and that he was not employable in a competitive labor market.  The employer contends on appeal that Wood did not prove that the work order processor position was created without a business purpose.  It further argues the commission relied upon speculative evidence presented by Marsha Hoexter, a vocational rehabilitation counselor.  We disagree.

> We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.  If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal . . . .

Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510 (1983).

In the instant case, Wood presented ample evidence from which the commission could reasonably conclude that the employer did not revive and modify the work order processor position for a business purpose.  Wood performed fewer than one-half the job tasks required of the last employee in the position.  He testified that he obtained this position because "this was the only thing they could find that I might be capable of doing." Moreover, although the job was approved for sixteen hours per week, Wood was only scheduled to work twelve hours per week, and, in fact, worked even fewer hours than assigned due to fatigue and severe headaches.  Finally, the evidence shows that Wood is often

unable to perform his assigned tasks and that, when those tasks are important, either his supervisor performs them or Wood performs them at a time when he is able.

The commission also considered the testimony of Hoexter who, in part, testified that "there are not any jobs out in the competitive labor market that [Wood] would be considered for" and that employers in the competitive market would not be as accommodating as the employer such that Wood could maintain a position elsewhere.  We disagree with the employer's claim that the commission improperly relied on Hoexter's expert testimony.

The credibility of an expert witness and the weight to be accorded the evidence are matters within the province of the commission, the fact finder in the instant case.  Georgia-Pacific Corp. v. Dancy, 24 Va. App. 430, 439, 482 S.E.2d 867, 871 (1997) (citing Horsley v. Commonwealth, 2 Va. App. 335, 339, 343 S.E.2d 389, 391 (1986)).  However, an expert's opinion must be supported by facts within his or her knowledge or established by other evidence.  Waynesboro Police v. Coffey, 35 Va. App. 264, 271, 544 S.E.2d 860, 863 (2001) (citing Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990)).  In the instant case, the expert relied on facts in evidence and facts gathered by her own investigation to reach her conclusion.  Hoexter indicated that she met with Wood and his wife, reviewed his medical records including a neuropsychological evaluation, and a report by Rehabilitative Services and Vocational Placement, Inc.  The commission, therefore, was entitled to consider and give due weight to Hoexter's testimony.

Because we find the evidence sufficient to support the commission's finding that Wood was "unemployable in gainful employment," defined as requiring a business purpose, we affirm.

<u>Affirmed</u>.