COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Humphreys and Felton
Argued at Salem, Virginia


VIRGINIA POLYTECHNIC INSTITUTE & STATE UNIVERSITY/
  COMMONWEALTH OF VIRGINIA

v.      Record No. 0943-05-3

JULIO EMILIO POSADA                                    OPINION BY
                                              JUDGE WALTER S. FELTON, JR.
JULIO EMILIO POSADA                               DECEMBER 13, 2005

v.      Record No. 0954-05-3

VIRGINIA POLYTECHNIC INSTITUTE & STATE UNIVERSITY/
  COMMONWEALTH OF VIRGINIA


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Joseph F. Giordano (G. Bryant Butler, Jr.; Semmes, Bowen &
                Semmes, P.C., on briefs), for Virginia Polytechnic Institute & State
                University/Commonwealth of Virginia.

                Monica Taylor Monday (Matthew W. Broughton; Gentry Locke
                Rakes & Moore, on briefs), for Julio Emilio Posada.


        Virginia Polytechnic Institute ("employer")[1] and Julio Posada ("claimant"), each appeal

from an award of the Virginia Workers' Compensation Commission ("commission").  Employer

asserts that the commission erred in finding:  (1) that it unreasonably defended its failure to pay

medical benefits pursuant to an existing award; (2) that a 2003 agreement between the parties to

increase Melanie Davis' weekly 24-hour attendant care compensation rate was a valid

modification of the commission's 1997 order; and (3) that claimant's wife's services are

---

        [1] Employer is self-insured.  It contracted management and administration of commission
awards, including payment of benefits, to Gates McDonald.  This dispute arises out of Gates
McDonald's failure to pay benefits under an existing award.

compensable under Code § 65.2-603 for providing 24-hour attendant care, including medical attention. Claimant contends that the commission erred in (1) reducing the amount of attorney's fees assessed against employer from $34,114.88 to $30,000; and (2) reducing the compensation to his wife, Melanie Davis ("Davis"), for her 24-hour attendant care services from $16.44 per hour to $10 per hour. For the reasons that follow, we affirm the commission's decision.

BACKGROUND

Claimant, while an engineering student, was employed at employer's airport. He suffered a traumatic amputation of both arms at shoulder level while using an auger to dig fence postholes. His injuries left him without ability to perform any functions of life requiring the use of arms and hands,[2] including waste elimination and cleaning, scratching, removing himself from entangled bed linens, preparing and eating food, dressing and undressing, grooming, oral hygiene, skin care, transferring from one position to another, balancing, and ambulation. Employer accepted compensibility of claimant's injuries, and, thereafter, the commission entered its award of permanent total disability benefits,[3] as well as lifetime medical benefits.

In July 1988, in its award of benefits to claimant, the commission memorialized a stipulation agreement between the parties, which provided in relevant part:

> [Claimant] is totally disabled under [§ 65.2-503(C)][4] of the Code of Virginia. *[T]he parties acknowledge that Mr. Posada's treating physician has ordered twenty-four hour attendant care* which is reasonable and necessary under the circumstances and that *such care will be rendered by individuals selected by Julio Posada.*

---

[2] As a result of the severity of the amputation of his arms, claimant was unable to use prosthetic arm devices.

[3] Claimant was awarded compensation at a rate of $176.26 per week.

[4] Formerly Code § 65.1-56(18).

- 2 -

(Emphasis added). The rate of compensation for the 24-hour attendant caregiver was to be determined by the parties and the commission from time to time over the course of claimant's lifetime. Employer paid claimant's chosen 24-hour caregiver pursuant to the 1988 agreement for some 16 years.[5]

In 1997, claimant's then girlfriend, Melanie Davis, left her career as a systems analyst in Gaithersburg, Maryland and obtained medical training to become a certified nursing assistant ("CNA"). Davis married claimant on March 1, 1997, and she contemporaneously assumed responsibility for claimant's 24-hour attendant care. In May 1997, the commission entered an order directing employer to "pay the sum of $910.00 per week to Melanie Davis . . . beginning March 1, 1997, and continuing until *modified by agreement of the parties or Order of the Commission*." (Emphasis added).

Employer continued to pay Davis at the rate of $910 per week through May 2003 when claimant's counsel requested an increase in the rate of compensation to $1,512. In his request, claimant's counsel advised that Davis might not be able to continue in her role as claimant's 24-hour attendant caregiver without the increase in pay.[6] Employer's adjuster agreed to the increase requested, and memorialized the agreement in claimant's file.

---

[5] Initially, claimant's parents, siblings, and church members provided attendant care. Claimant testified that in 1995, he sought employer's assistance to obtain a permanent 24-hour attendant caregiver. Employer responded by asking him to find an attendant himself. Claimant inquired if employer would pay his mother to serve as his 24-hour attendant caregiver, and employer replied in the affirmative, stating that claimant could choose anyone he wanted. Employer compensated claimant's mother at a rate of $425 per week.

[6] At oral argument, claimant's counsel noted that Davis, as claimant's 24-hour attendant caregiver, was without employment benefits such as health and life insurance, vacation, holidays, retirement plan, and other standard employee benefits. Absent any increase in compensation to obtain such benefits, counsel suggested that Davis considered outside employment and turning her husband's 24-hour care over to others.

During this time period, claimant and Davis moved to Edenton, North Carolina to be closer to Davis' parents, who provided assistance in claimant's care when it was necessary for Davis to be out of his presence for personal appointments, grocery shopping, and other essential trips outside the home.

In December 2003, Patricia Haynes became the adjuster responsible for administering the commission's award for employer. In May 2004, Haynes unilaterally stopped (or, in her words, "delayed") paying Davis after discovering, during a review of claimant's file, that she was married to claimant.[7] Haynes also did not pay a $68 medical bill claimant incurred for an office visit with Dr. Perry, his then treating physician, as well as a $117 pharmacy bill for claimant's prescription for depression related to his compensable injury. Moreover, Haynes failed to notify claimant, claimant's counsel of record, or Davis of her intent to "delay" payment under the existing award.

As a result of employer's failure to pay claimant's 24-hour attendant care expenses and several medical bills for nearly three months, claimant filed a Claim for Benefits and Application for Expedited Hearing on July 30, 2004. Some six weeks later, on September 13, 2004, Haynes resumed 24-hour attendant care payments to Davis, but reduced the payments to the prior rate of $910 per week, rather than the $1,512 per week rate agreed to by claimant's counsel and the previous adjuster. At the time of the deputy commissioner's hearing on November, 18, 2004, Haynes testified that the doctor's office visit and prescription bills still had not been paid, but were still being "processed," some six months after claimant submitted them to employer for payment.

---

[7] Haynes ceased payments to Davis for her 24-hour attendant care services altogether from May 2004 until September 13, 2004.

In October 2004, some two and a half months after claimant filed his claim for benefits and expedited hearing, employer filed an Application for Hearing seeking to terminate compensation to Davis for the 24-hour attendant care services she provided claimant based on its "belated discovery" of her relationship to claimant, notwithstanding the clear terms of the 1988 award, included in claimant's file, permitting claimant to select whomever he desired to serve as his 24-hour attendant caregiver. Alternatively, employer sought to modify the 1997 order to reimburse Davis only for the specific attendant care services she performed beyond the scope of her normal spousal duties.

Finding that Davis was entitled to compensation for her 24-hour attendant care of claimant pursuant to the 1988 award, the deputy commissioner modified the commission's 1997 order to provide for weekly payments to Davis at a rate of $1,512 per week beginning June 1, 2003,[8] and further ordered employer to pay her the $602 per week differential between the May 2003 agreed amount of $1,512 per week and the $910 amount paid from June 1, 2004, through November 30, 2004. The deputy commissioner also awarded Davis compensation for her 24-hour attendant care services at the rate of $16.44 per hour beginning December 1, 2004. In addition, the deputy commissioner found that employer had unreasonably defended claimant's application to enforce payment of benefits under the existing award pursuant to Code § 65.2-713, and assessed $34,144.88 in attorney's fees against employer.

On March 18, 2005, the full commission affirmed the deputy commissioner's award with two modifications. The commission decreased Davis' 24-hour attendant care compensation to a

---

[8] The rate is consistent with the agreement between employer's adjuster and claimant's counsel, memorialized in the adjuster's file.

rate of $10 per hour[9] beginning December 1, 2004, and reduced the amount of attorney's fees assessed against employer to $30,000, concluding employer had reasonably litigated the issue of Davis' rate of, though not entitlement to, compensation.

ANALYSIS

On appeal, "[d]ecisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991) (citing Code § 65.1-98 (now Code § 65.2-706); McCaskey v. Patrick Henry Hosp., 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983)). We view the evidence in the light most favorable to the prevailing party below, and "[t]he fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's finding." Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 26, 480 S.E.2d 123, 124 (1997); Farrar, 13 Va. App. at 229, 409 S.E.2d at 826 (citing Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986)).

I.

Because the questions on appeal raised by employer and claimant are interrelated, we address them together.

Employer argues the commission abused its discretion in finding that it unreasonably defended claimant's application to enforce the terms of the prior award of benefits. It contends that its defense was based on reasonable grounds because the delay in payment under the award occurred due to "oversight," and to the investigation it undertook when it first learned that Davis was claimant's wife. Claimant argues the commission erred in concluding that employer was entitled to a reduction in attorney's fees awarded for its unreasonable defense of claimant's

---

[9] The $10 per hour rate was based on testimony before the deputy commissioner of the prevailing rate ($6.86 - $10 per hour) in the area for a CNA hired directly and not through an agency.

attempt to enforce the award. He asserts employer's defense, that Davis was not compensible under Code § 65.2-603[10] as claimant's 24-hour attendant caregiver because she was his wife, was unreasonable and contradicts the plain language of the commission's 1988 award giving him sole discretion to select his attendant.

Code § 65.2-713 provides that the commission may assess against an employer or insurer, who has brought or defended proceedings or, alternatively, delayed payment under an existing award without reasonable grounds, the whole cost of the proceedings, including a reasonable attorney's fee. The decision to assess fees or costs rests in the sound discretion of the commission and will be reversed only for an abuse of that discretion. Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 200-01, 336 S.E.2d 903, 906 (1985).

The record on appeal demonstrates that employer's adjuster, Patricia Haynes, purposefully withheld claimant's 24-hour attendant care payments from May 2004 to September 2004. She admitted she was aware that the proper procedure to discontinue payments under an existing award in dispute was to file a change-in-condition application with the commission. She also admitted she never sought to file an application prior to ceasing payments. Nor did she make an effort to communicate with claimant, his counsel of record, or Davis prior to ceasing payments. Furthermore, at her November 2004 deposition, Haynes acknowledged that the delay in payment was "unnecessary."

When asked by the deputy commissioner why she chose to "delay" payment rather than follow the commission's procedures, Haynes responded, "I can't answer that. I don't know." She admitted that she had not read claimant's file, which contained the 1988 agreement and award providing for claimant's unrestricted authority to choose his 24-hour attendant caregiver;

---

[10] Code § 65.2-603 provides, in part, that "[a]s long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee . . . necessary medical attention."

the 1997 order that Davis was to be compensated at a weekly rate of $910 until modified by agreement of the parties or order of the commission; and the 2003 agreement to increase Davis' weekly compensation rate to $1,512.

Employer's unreasonable defense was further compounded by its failure to pay bills for claimant's visit to his treating physician and his prescription expenses, both clearly payments authorized under the existing award. Only after claimant submitted a claim for benefits and expedited hearing does the record reflect any effort on the part of employer to pay claimant's existing medical bills, and to resume payments to Davis for her 24-hour attendant care services, albeit the latter at a lower rate than had been agreed on and memorialized in the adjuster's file for claimant in 2003. Moreover, the record reflects that at the time of the deputy commissioner's hearing, employer had still failed to pay the two covered medical bills and gave no reasonable basis for failing to do so.

Additionally, despite ample notice of the hearing date,[11] employer failed to employ its vocational expert, and to provide notice of his being a witness to claimant until just five days before the deputy commissioner's hearing on November 18, 2004.

The deputy commissioner aptly concluded:

> Because [employer and its] adjuster ha[ve] been continually inattentive, the claimant was forced to seek relief through the hearing process, with all of its attendant inconvenience and expense. In fairness, that expense should be borne by the party responsible.

On review, the full commission concluded:

> [t]he defendants did not have the right to unilaterally suspend *all* payments to Ms. Davis. Moreover, the defendants' excuse of "oversight" explains, but does not justify, their failure to pay medical bills and expenses that had been submitted to the claims

---

[11] Notice of Hearing was filed on August 23, 2004. Employer requested a continuance on September 2, 2004, which was granted by Deputy Commissioner Costa. The hearing was subsequently scheduled for November 18, 2004.

adjuster. These failures caused an unreasonable delay in payment of the claimant's attendant care, prescriptions, medical bills, and medical expenses.

For the reasons cited above, we find no merit in employer's claim that the commission erred in determining that employer unreasonably defended its failure to pay benefits pursuant to an outstanding award and that its assessment of $30,000 in attorney's fees against employer was an abuse of discretion. See Volvo White Truck Corp., 1 Va. App. at 200-01, 336 S.E.2d at 906.

Likewise, we find no abuse of discretion on the part of the commission in reducing the award of attorney's fees against employer by the deputy commissioner from $34,114.38 to $30, 000, the commission having determined that the rate of Davis' compensation under the existing award was an appropriate matter for decision.

II.

Claimant contends that the commission erred in finding that the prevailing community rate for Davis' 24-hour attendant care services in Edenton, North Carolina, claimant's place of residence, was $10 per hour. When the commission awards medical benefits to a claimant, an employer is only liable for "charges as prevail in the same community for similar treatment when such treatment is paid for by the injured person." Code § 65.2-605. Whenever an employee receives treatment outside the Commonwealth, the commission must determine the prevailing rate charged for the services in the appropriate community in which the treatment is received. See Rule 14, Rules of the Virginia Workers' Compensation Commission.

Susan Wirt, a registered nurse and certified life care planner, testified on behalf of claimant that the prevailing rate for an attendant care CNA hired through a staffing agency in claimant's geographic area was $16.44 per hour. Employer's vocational expert, James Graham, testified that the prevailing rate for CNAs directly hired by their patients in claimant's community was $6.86 to $10 per hour. From this evidence, the deputy commissioner concluded

- 9 -

that the appropriate rate for Davis' 24-hour attendant caregiver services was $16.44 per hour. On review, the full commission concluded that the appropriate rate was $10 per hour because Davis was not hired through an agency with its corresponding higher costs for overhead and benefits. We conclude the record contains credible evidence to support the full commission's decision to fix Davis' 24-hour attendant care rate at $10 per hour. As such, the commission's decision is conclusive and binding on this Court and will not be disturbed.

III.

Employer contends the commission erred in finding that the parties' 2003 agreement to increase Davis' compensation to $1,512 per week was a valid modification of the commission's 1997 order. It argues that the agreement to increase the rate from $910 per week to $1,512 per week was merely a "band-aid" to prevent Davis from ceasing her services. Employer further argues that the 1997 order was not modified because it did not send claimant or claimant's counsel any confirming written memorandum establishing that rate for claimant's attendant caregiver.

The record shows that the commission's 1997 order provided that the then wage rate for claimant's attendant would remain in effect "until modified by agreement of the parties or Order of the Commission." The adjuster's June 2, 2003 file note memorializing the agreement with claimant's counsel for the increased wage rate reflects that the parties "agreed to adj the nurse from $910 week to[] $1,512.00 wk." Thereafter, employer continually compensated Davis at the weekly rate of $1,512 for the following 11 months. It filed no application for hearing to challenge the agreed rate or to otherwise determine a different rate for attendant care in the geographic area where claimant received treatment. See Rule 14, Rules of the Workers' Compensation Commission. We conclude that the record demonstrates that the parties intended

their agreement to increase Davis' 24-hour attendant care compensation rate to constitute a binding modification of the 1997 order.

Employer alternatively argues that if an agreement for the increased wage was a valid modification, the agreement should be set aside because claimant failed to advise employer that his 24-hour attendant caregiver was his wife. Claimant denies any misrepresentation that Davis, his caregiver, was his wife. He further contends that employer waived any defense of willful misrepresentation by raising the issue for the first time on review before the full commission. We agree. See Hervey v. Newport News Shipbuilding & Dry Dock Co., 12 Va. App. 88, 91-92, 402 S.E.2d 688, 690 (1991) (party's failure to raise issue at initial hearing before the deputy commissioner not cured by presenting issue to full commission).

Moreover, the record reflects that employer's adjuster easily found information in claimant's file that indicated Davis was claimant's wife, and demonstrates no attempt on claimant's part to conceal his marriage to Davis. Because employer failed to "promptly discover facts that were available" to it, employer's willful misrepresentation claim is "simply a case of inadequate, incomplete, and deficient investigation." J & D Masonry v. Kornegay, 224 Va. 292, 296, 295 S.E.2d 887, 890 (1982). Accordingly, we find, "the record is devoid of evidence the claimant . . . concealed [his marriage]." Id.

We conclude that there is credible evidence in the record before us to affirm the commission's finding that the parties' 2003 agreement as to the caregiver rate modified its earlier 1997 order and that the commission did not err in ordering employer to "pay Ms. Davis an additional $602.00 per week" from June 1, 2004 to November 30, 2004.

IV.

Employer argues the commission erred in considering Nurse Wirt's testimony regarding the compensibility of Davis' attendant caregiver services. It asserts that Wirt was not qualified

to give an opinion on whether the care Davis provided claimant was beyond the scope of her household duties.

"The credibility of an expert witness and the weight to be accorded the evidence are matters within the providence of the commission." Great N. Nekoosa Corp. v. Wood, 37 Va. App. 54, 63, 553 S.E.2d 555, 559 (2001) (citing Georgia Pac. Corp. v. Dancy, 24 Va. App. 430, 439, 482 S.E.2d 867, 871 (1997)). "However, an expert's opinion must be supported by facts within his or her knowledge or established by other evidence." Id. at 64, 553 S.E.2d at 560 (citing Waynesboro Police v. Coffey, 35 Va. App. 264, 271, 544 S.E.2d, 860, 863 (2001)). The record shows that Wirt, a registered nurse and a certified life care planner, observed firsthand Davis' daily care of claimant, and personally discussed the level of care provided by Davis with claimant's attending physician. We find the commission did not abuse its discretion in receiving Nurse Wirt's testimony as to the level of care Davis provided beyond her duties as claimant's wife, given her qualifications and the information she acquired from observations of Davis' daily routine and discussions with claimant's treating physician. Additionally, Nurse Wirt's testimony mirrored the statements of both claimant's physicians and the independent medical examiner as to the care claimant required, and the caregiver services Davis provided.

V.

Despite the clear language of the 1988 award granting claimant the unfettered right to choose his attendant caregiver, employer contends that Davis, as claimant's wife, was not eligible to receive compensation as claimant's 24-hour attendant caregiver. Citing Warren Trucking v. Chandler, 221 Va. 1108, 277 S.E.2d 488 (1981), as a basis for its unilateral termination of payments to Davis, employer argues that Davis was not entitled to be

compensated for ordinary services within the scope of her normal household duties.[12] We

disagree.

In Warren Trucking, unlike the situation before us, no agreement existed between the

employer and claimant as to choice of an attendant caregiver. There, the claimant suffered a

head injury, which caused him to have vertigo and blackout spells. The claimant's wife, who

possessed no medical training and was unemployed before claimant's accident, assisted claimant

with maintaining his balance, shaving and bathing, and transportation to appointments.

Claimant's treating physicians concurred, however, that claimant's concussion injury did not

require continuous home attendant care. Applying a four-part test[13] to determine when a

spouse's care would be compensable as necessary medical attention under Code § 65.2-603, the

Court there concluded that the claimant's wife was not eligible for compensation because she did

---

[12] We note that in 1995, employer approved claimant's choice of his mother as his
24-hour attendant caregiver, and compensated her as such.

[13] A spouse's care is eligible for compensation pursuant to Code § 65.2-603 if:

> (1) the employer knows of the employee's need for medical
> attention at home as a result of the industrial accident; (2) the
> medical attention is performed under the direction and control of a
> physician, that is, a physician must state home nursing care is
> necessary as a result of the accident and must describe with a
> reasonable degree of particularity the nature and extent of the
> duties to be performed by the spouse, (3) the care rendered by the
> spouse must be of the type usually rendered only by trained
> medical attendants and beyond the scope of normal household
> duties; and (4) there is a means to determine with proper certainty
> the reasonable value of the services performed by the spouse.

Warren Trucking, 221 Va. at 1116, 277 S.E.2d at 493.

- 13 -

not render care at the direction of claimant's physician, nor were the services she provided beyond the scope of her normal household duties.[14]

Here, the parties agreed that claimant could select whomever he desired to serve as his 24-hour attendant caregiver -- whether mother, wife, or stranger. This agreement was embodied in the commission's 1988 award and is binding as an enforceable obligation between the parties. See Code § 65.2-701(A); Apple Construction Corp. v. Sexton, 44 Va. App. 458, 463, 605 S.E.2d 351, 353 (2004) (holding that a stipulation made before the commission, no less than a concession made before a court, is a binding and enforceable obligation).

Moreover, unlike the claimant in Warren Trucking, both claimant's physician and the independent medical examiner concurred that claimant required 24-hour attendant care provided by a person with training in emergency medical procedures. Further, claimant's spouse left her career as a systems analyst and, unlike the spouse in Warren Trucking, obtained training and certification as a nursing assistant. Davis was qualified to render emergency medical assistance, in addition to performing the in-home nursing care, including massage and rehabilitative activities, ordered by claimant's physicians. Furthermore, claimant's physicians stated that Davis provided these services to claimant at their direction, and under their control. We find the factors presented to us in this record distinguish it from those in Warren Trucking, particularly the unique circumstances of claimant's injury and award of benefits.

Additionally, we find credible evidence in the record that Davis' training in emergency medical procedures and her adherence to the physicians' directions regarding claimant's daily

---

[14] The Court in Warren Trucking determined that the "normal household duties" of a spouse include meal preparation, feeding, assisting with dressing/undressing, grooming, bathing, assistance in walking/balancing, providing transportation, and administering routine medication. Warren Trucking, 221 Va. at 1118, 277 S.E.2d at 494.

- 14 -

care and medical needs so predominated over Davis' other household duties as to fall within the Warren Trucking compensibility guidelines.

CONCLUSION

For the above reasons, we affirm the award of the commission. We conclude the commission did not abuse its discretion in awarding attorney's fees against employer for unreasonably defending its failure to pay medical benefits to claimant under an existing award. We also conclude that the commission did not abuse its discretion in reducing the award of attorney's fees assessed against employer from $34,114.88 to $30,000 based on its finding that employer reasonably litigated the narrow issue relating to the rate of compensation for Davis as claimant's 24-hour attendant caregiver. We hold that the commission did not err in ruling that Davis is entitled to receive compensation at the rate of $10 per hour for her 24-hour attendant care services. Moreover, we conclude from the record the parties' 2003 agreement to increase Davis' wage rate to $1,512 per week was a valid modification of the commission's 1997 order and, therefore, the commission did not err in ordering employer to pay claimant's spouse a $602 per week differential for the period of June 1, 2004 through November 30, 2004.

ATTORNEY'S FEES ON APPEAL

Claimant requests an award of attorney's fees and costs pursuant to Code § 65.2-713(A), which grants us the authority to assess against employer the costs of these proceedings "including a reasonable attorney's fee," if we determine these "proceedings have been brought, prosecuted, or defended without reasonable grounds." See, e.g., Lowes of Short Pump Virginia v. Campbell, 38 Va. App. 55, 62, 561 S.E.2d 757, 760 (2002). Having affirmed the commission's award that employer unreasonably defended its failure to pay outstanding medical benefits under an existing award, and having the benefit of reviewing the entirety of the record on appeal, including the continuing defense by employer on appeal of what clearly was an

- 15 -

unreasonable delay in payment of medical benefits under an existing award, we conclude that claimant is entitled to the costs of appeal, including a reasonable attorney's fee, and remand to the commission pursuant to Code § 65.2-713(A) for a determination of those fees and costs.

<u>Affirmed and remanded.</u>